BEER, Judge.
This is an appeal from an eviction proceeding in which the lessors successfully terminated a lease which, in pertinent part, provided as follows:
“Lessee is granted the provilege (sic) to renew this lease for an additional five (5) years on the same terms and conditions of this lease, except the rent shall be One Thousand ($1,000.00) Dollars per month. Should Lessee elect to renew this lease, he shall notify Mrs. Shirley L. Giraud, 342 Jefferson Heights Avenue, New Orleans, La. 70121, by registered or certified mail of Lessee’s intention to renew, which said notice shall be delivered to Mrs. Shirley L. Giraud not less than ninety (90) days prior to the expiration of this lease.”
The term of the lease was from March 1, 1972 to February 28,1977. Alford G. Clark, appellant-lessee, paid rent regularly to Mrs. Giraud until October, 1973. Thereafter, in November, 1973, Clark entered into a sort of hybrid sublease with Bill Colacurcio, Jr. (styled “Management Agreement”), by which Colacurcio managed the premises and retained the income produced therefrom. Under this new agreement, Colacurcio took over the responsibility of paying Mrs. Gi-raud and, from November, 1973 onward, was in touch with Mrs. Giraud — at least for the purpose of making the monthly payments. In May, 1974, Mrs. Giraud moved to Covington, Louisiana, and notified Colacur-cio, who, thereafter, mailed the rental payments to her new address.
It is essentially undisputed that the deadline for notification of extension of the lease had to be delivered to Mrs. Giraud no later than November 30, 1976. Apparently aware only that she no longer resided at 342 Jefferson Heights Avenue, Clark unsuccessfully attempted to contact Colacurcio on November 29, 1977, to ascertain her new address. By reference to the Covington phone book, Clark found a listing of one John Giraud, Highway 59, Covington.[1] Then, in an attempt to notify Mrs. Giraud *754 of his intention to renew the lease, Clark allegedly sent:
1) a mail-o-gram at 4:22 p.m. on November 30, 1976 to Highway 59, Coving-ton, Louisiana,
2) a certified letter addressed to Highway 59, Covington, Louisiana, dated November 29, 1976 and postmarked November 30, 1976,
3) a certified letter addressed to 342 Jefferson Heights Avenue, dated November 29, 1976 and postmarked November 30, 1976, and
4) a Western Union telegram to 342 Jefferson Heights Avenue, on November 30, 1976.
On Friday, December 3,1976, Mrs. Giraud received the mail-o-gram and, also, notice from the post office that mail was being held there for her. She actually picked up (from the post office) the certified letter addressed to her at Highway 59, Covington, Louisiana, on Tuesday, December 7, 1976. The other certified letter was never received by her, and was returned unopened to Clark. Mrs. Giraud testified that she did not ever receive the telegram allegedly sent to her former address.
Apparently concluding that none of Clark’s efforts to notify Mrs. Giraud by November 30, 1976, were successful nor that timely notification had been waived, the trial court awarded plaintiffs possession of the premises.
Clark appeals, contending that Mrs. Gi-raud’s own action in failing to notify him of her new address constituted waiver of her right to timely delivery of the notice to renew.' He also raises the contention, not affirmatively pled below, that Giraud and Colacurcio apparently colluded to prevent Clark’s renewal of the lease, contending that the trial judge improperly prevented his attorney from cross-examining Colacur-cio concerning this possible collusion.
However, at the time of trial, Co-lacurcio was a co-defendant with Clark, and Clark had not filed a third-party demand against him. Since Colacurcio was not an adverse party, we cannot say that the trial judge erred in limiting cross-examination of him by Clark’s able counsel. Furthermore, as against Giraud, Clark may not allege collusion or fraud for the first time on appeal. See, La.C.C.P. arts. 856, 1005.
It is clear from the lease provisions that delivery of notice to renew, not merely attempted delivery of notice to renew, was required. Only two communications were received, the mail-o-gram (on December 3) and the certified letter addressed to Highway 59 (notice of which was received on December 3).
Since time is of the essence in the renewal of a lease (see, e. g., Jackson Brewing Co. v. Wagner, 117 La. 875, 42 So. 356 (1906); Le Blanc v. Barielle, 25 So.2d 638 (Orl.La.App.1946), we must determine whether attempted timely notification, received after expiration, is sufficient when the lessor has moved without prior notice but where notice may be implied. Other jurisdictions are split on the question of whether such notice is sufficient. See, 51 A.L.R.2d 1404, 1429-1431.
In support of his argument that timely notice was waived, or that his notice was sufficient, appellant cites Woods v. Cities Service Oil Company, 142 So.2d 168 (La. App. 3rd Cir. 1962). The facts are close. In that case, on November 29, 1961, a telegram was sent to the lessor at his proper address. On the following morning, the telegraph agent phoned lessor to advise of receipt of the telegram, but was unable to reach him. On the same morning, the agent was able to reach lessor’s son, who advised him that lessor was out of town, and instructed him to mail the notice to him, which the agent did. Lessor picked up the telegram on December 2, which was after the expiration of the renewal period, but admitted he was out of town during much of the interval. The court concluded that the notice would have been received timely had lessor been in town, and held the attempted notice was sufficient.
If, here, the appellant had absolutely no knowledge of lessor’s move from her former address, the rule of Woods, supra, might well apply. However, Clark is, himself, one *755 of the authors of the Clark-Colacurcio “Management Agreement,” and Colacur-cio’s apparently undisputed knowledge of Giraud’s new address must, we believe, be imputed to Clark as far as Giraud is concerned.[2] See e. g, Russell v. Armington, 162 So.2d 91 (La.App. 4th Cir. 1964); Office Equipment, Inc. v. Hyde, 145 So.2d 86 (La. App. 4th Cir. 1962).
Even were this not so, Clark apparently knew, at least, of the move to some address in Covington and, even on November 29th, had the opportunity to call the two Giraud listings in the Covington phone book in order to ascertain the proper new address. Furthermore, he lived in Slidell, only 45 minutes away by car, and could have driven to the two addresses, determined where Shirley L. Giraud lived, and physically delivered the notice to renew.
Clark bore the risk of nondelivery, or untimely delivery, of notification of his intention to renew. The trial court’s apparent factual determination is that no basis exists for concluding that such timely notification was, on the facts found, effectively waived. We do not find this apparent conclusion to be manifestly in error nor unsupported by the record and, accordingly, affirm at appellant’s cost.

AFFIRMED.

. There were only two Girauds listed. John Giraud was plaintiffs brother-in-law. The other listing, Richard Giraud, Sr., was that of Mrs. Shirley Giraud’s husband, and listed her new address and telephone number.

. Although Colacurcio’s role in these proceedings is not entirely clear, we can perceive the existence of a situation where his interests may very well be in conflict with those of Clark, at least insofar as the lease with Giraud is concerned. But there is nothing in the record to support the existence of a sublease from Clark to Colacurcio nor even, for that matter, any evidence which clearly signals a different relationship between Colacurcio and Clark than the one described in their so-called “Management Agreement.”