|, GREMILLION, Judge.
In this case, the intervenor, Southwest Loan Company of Lafayette, Inc., contests the trial court’s judgment evicting both it and defendant, Cleveland A. Payne, from certain leased property. For the following reasons, we affirm.
FACTS
On March 12, 1984, Zepherin Boudreaux leased certain immovable property to Payne. The lease had a primary term of fifteen years commencing on March 1, 1984, and terminating on February 28,-1999. The lease contained an option to renew, in which Boudreaux granted unto Payne:
[T]he sole and exclusive right, option and privilege of renewing this lease for two additional renewal option terms of twenty (20) years each.
In the event that [Payne] desires to renew this lease, then and in that event [Payne] shall give [Boudreaux] three (3) months written notice.
Shortly thereafter, on March 23, 1984, Boudreaux, Payne, and Guaranty Bank & Trust Company entered into an “Assignment of Real Estate Lease and Agreement,” whereby Guaranty Bank loaned $60,000 to Payne for improvements to the leased property. In consideration of Guaranty Bank making the loan to Payne, Bou-dreaux assigned all of his rights, titles, and interests in the lease agreement between him and Payne to Guaranty Bank. The assignment contained the following provisions:
*896 II. [Boudreaux], in consideration of [Guaranty Bank] making said loan to [Payne] as recited herein, agrees:
a. [Boudreaux] acknowledges that the buildings and other improvements located upon the leased property are separately owned by CLEVELAND A. PAYNE and accordingly may be mortgaged by him to secure the aforementioned loan. Further, [Bou-dreaux] hereby consents to the assignment of the lease hereinabove made by the said CLEVELAND A. PAYNE.
Lb. In the event of any default under ther (sic) terms of said lease, [Bou-dreaux] agrees that he will give written notice to [Guaranty Bank] of any such default of [Payne] under said lease, which notice shall likewise provide that [Guaranty Bank] has thirty (30) days after receipt of the notice to cure such default.
c. [Boudreaux] will not terminate said lease for any such default unless the bank fails to cure such default within the time stipulated above;
d. Notwithstanding the above assignment so long as [Boudreaux] has not notified [Guaranty Bank] of default by [Payne] and [Guaranty Bank] has not entered into actual possession of the leased property described herein, the said [Guaranty Bank] shall not be liable for the past or future rent or other obligations of [Payne] pursuant to or in connection with said lease; however when [Guaranty Bank] does receive notice of default by [Payne] from [Boudreaux], it shall then have thirty (30) days from said date to enter into actual possession or constructive possession of said property and upon default of entering into actual or construction (sic) possession during said term, all assignment rights hereunder to [Guaranty Bank] shall ipso facto terminate.
On June 23 and 24, 1991, Boudreaux, his wife, Mae Smalley Boudreaux, Payne, Southwest Loan, and Premier Bank National Association (formerly Guaranty Bank & Trust Company) entered into a Cancellation of Assignment, Re-Assignment of Real Estate Lease, and Agreement. In that agreement, Premier Bank released Payne from the March 23, 1984 Assignment of Real Estate Lease and Agreement and authorized the Lafayette Parish Clerk of Court to cancel and erase that agreement from his records. The agreement further provided that Southwest Loan loaned, and/or agreed to loan, Payne up to $48,000 on certain immovable property located on the Lproperty leased by Payne from Boudreaux. Payne, with the consent of Boudreaux, assigned all rights, title, and interests under the lease to Southwest Loan. The identical language quoted above from the March 23, 1984 agreement was also contained in this instant agreement.
Boudreaux died on July 14,1993, and his succession was completed six months later. Mae Smalley Boudreaux subsequently died and her succession was completed in July 1998. On December 22, 1998, Payne, not knowing of Ms. Boudreaux’s death, sent a letter to her at 121 Gayle Drive, Lafayette, Louisiana 70506, ostensibly exercising his option to renew the lease.[1] That letter was returned to Payne as undeliverable. He contacted another Boudreaux tenant, Mike Plachek, who advised him that Ms. Boudreaux had passed away and that he had been sending rent checks to Mr. and Mrs. Huey Bernard, 200 Majestic, Brous-sard, Louisiana 70508.
On January 20, 1999, Payne contacted the Bernards regarding the leased proper *897 ty by letter at thát address. After failing to obtain a response, Payne remained on the property, continued making rental payments, and retained counsel in an attempt to renew the lease. His attempts were unsuccessful and he received no response until he received a letter on November 17, 1999, mailed certified mail on November 10, 1999, from Attorney Richard L. Becker. In that letter, Becker advised Payne that he represented the heirs of Mr. And Mrs. Zepherin Boudreaux, that the lease had terminated by its own terms, and that the heirs were terminating the current |4month to month tenancy. The letter further notified Payne to vacate the leased premises no later than December 31, 1999, and that property of any kind remaining in or on the leased property after December 31, 1999, would become the property of the lessors.
By letter dated November 18, 1999, Southwest Loan, through its manager, Elwood Hollier, notified Becker that, as assignees of the lessors, they elected to renew any and all options on the property in question and to cure any default which may have existed. Payne continued to occupy the property. Thereafter, on February 16, 2000, the heirs of Zepherin Bou-dreaux filed a “Rule to Evict Tenant” against Payne. Payne answered the rule, setting forth affirmative defenses and a reeonventional demand; Southwest Loan filed an intervention. Trial of this matter was held on March 2, 2000, with the trial court granting judgment in favor of Bou-dreaux and evicting Payne and Southwest Loan. It is from this judgment that Southwest Loan appeals, claiming the trial court erred in its ruling that Payne’s failure to timely renew the lease under the option contained in the lease was not a default under Boudreaux’s assignment of the lease to Southwest Loan.
DISCUSSION
“The duration and the conditions of leases are generally regulated by contract, or by mutual consent.” La.Civ.Code art. 2684. “The parties must abide by the agreement as fixed at the time of the lease.” La.Civ.Code art. 2686. When the lessee provides written notice of his intention to renew, but that notice is untimely, renewal of the lease under an option to renew is not valid. Hidalgo Motors, Inc. v. Opelousas Courtesy Motors, Inc., 576 So.2d 1086 (La.App. 3 Cir.1991). In Hi-dalgo, | fjthis court also found that increased rental payments made for two months after the lease expired did not amount to an exercise of the lessee’s option to renew. Id. We also note the case of Southern Ventures Corp. v. Texaco, Inc., 372 So.2d 1228 (La.1979), where the supreme court found that a lease agreement, which converted to a month to month lease after the expiration of the initial lease period, was not renewed where notice of the lessee’s election to exercise the renewal option did not comply with the lease provision requiring such notice no later than sixty days prior to the expiration of the initial term.
In the case at hand, the trial court found that the option to renew should have been executed by November 30, 1998, and that there was no written notification by Payne prior to that date. The trial court further found that the letter sent by Payne on December 22, 1998, was insufficient to renew the lease as the deadline to renew had passed. We agree. Clearly, under the terms of the lease, Payne, as the lessee, did not timely renew the lease. Thus, the lease expired on its own terms on February 28, 1999, and began as a month to month lease on the following day, March 1, 1999.
We next turn our attention to Southwest Loan’s argument that Payne’s failure to timely exercise the renewal option was a default pursuant to its assignment from Boudreaux. Consequently, Southwest Loan claims that, under the terms of the assignment, Boudreaux or his heirs were required to give it written notice of Payne’s failure to exercise the option to renew in order to allow it thirty days after receipt of such notice to cure *898 the default, ie., exercise the option to renew.
In its reasons for judgment, the trial court noted that “default” was not defined in the assignment agreement. The trial court then turned to Black’s Law | ^Dictionary for a definition of the word “default” and relied on the following language: “An omission of that which ought to be done. Specifically, the omission or failure to perform a legal or contractual duty ... to observe a promise or discharge an obligation (e.g. to pay interest or principle on a debt when due) or to perform an agreement.” BlaCK’s Law Dictionary 417 (6th ed.1990) (citations omitted). The trial court then held that “[t]he implication to the Court as to that definition is that: it’s an affirmative duty to do something. It’s an obligation that you have to do. It’s not an optional obligation. It is one that you ... must do.” The Court went on to say, “what a default to me means is something that you must do. And, failure to do that would be a breach of an agreement.” We agree.
In continuing its analysis, the trial court turned again to Black’s Law Dictionary for the definition of the word “option,” relying on the following language: “A right, which acts as a continuing offer, given for consideration, to purchase or lease property at an agreed upon price and terms, within a specific time. An option is an agreement which gives the optionee the power to accept an offer for a limited time.” Id. at 1094. The trial court then stated, “To exercise [an option] is a decision of the option holder to require that the grantor of the option respect an agreement. The period during which an option may be exercised is specified in the contract. The exercise date or expiration date is the final date on which the option holder may exercise the option.” Applying these definitions to the terms of the assignment agreement, the trial court found that the default provisions did not apply to the failure to exercise the option; rather, they dealt with the general terms of the lease, such as the payment of the monthly rent. We agree with that interpretation.
|7Clearly under the terms of the lease, Southwest Loan could have timely exercised the option to renew. However, Bou-dreaux, as the lessor, was not required to give notice to Payne under the terms of the lease that the option period was nearing. In that regard, Boudreaux was not required to give notice of the failure to renew to Southwest Loan, as he would have been required to do had Payne failed to perform under the terms of the lease, such as fail to make monthly rental payments. Once the time for renewal of the lease had passed, there was nothing Southwest Loan could do to cure that defect.
Southwest Loan notes that the word “default” is not defined in the general definitions section of the Uniform Commercial Code (La.R.S.10:l-201) and correctly states that Black’s Law Dictionary also defines “default,” as “[b]y its derivation, a failure.” Id. at 417. Since default is not defined by the UCC, but is defined as a failure by Black’s Law Dictionary, Southwest Loan argues that Payne’s failure to exercise the option was a default. We disagree. In this connotation, a default is a failure to perform to legal duty or an obligation required under the agreement. Payne’s failure to make rental payments would have been a default, as he was obligated under the agreement to make certain payments. However, Payne was not required and had no legal duty to exercise the renewal option. Therefore, failure to exercise the renewal option was not a default under the terms of the agreement. Having so found, we find no merit in Southwest Loan’s assignment of error. The judgment of the trial court is affirmed.
CONCLUSION
The judgment of the trial court evicting the defendant-appellant, | ^Cleveland A. Payne, and the intervenor-appellant, Southwest Loan Company of Lafayette, *899 Inc., is affirmed. Southwest Loan is taxed with the costs of this appeal.
AFFIRMED.

. That letter in its entirety read:
Dear Ms. Boudreaux,
I am writing in regard to the property I leased from Mr. Boudreaux in 1994(sic) at 110 Doucet Road. We will be coming up to the first option by March 1, 1999, and I need to sit down with you and discuss the new option on the property.
Please contact me as soon as possible.