836 So.2d 256 (2002)
SIZELER HAMMOND SQUARE LIMITED PARTNERSHIP
v.
GULF STATES THEATRES, INC., n/k/a Hammond Theatres, Inc. and Hammond Theatres, L.L.C.
No. 02-CA-759.
Court of Appeal of Louisiana, Fifth Circuit.
December 11, 2002.
Writ Denied March 21, 2003.
Robert A. Kutcher, Nicole S. Tygier, Patricia D. Tunmer, Chopin, Wagar, Cole, Richard, Reboul & Kutcher, LLP, Metairie, LA, for Sizeler Hammond Square Limited Partnership, Plaintiff/Appellant.
Rodney C. Cashe, Deshea S. Richardson, Cashe, Lewis, Moody, & Coudrain, Hammond, LA, for Gulf States Theatres, Inc., n/k/a Hammond Theatres, Inc. and Hammond Theatres, L.L.C.
Panel composed of Judges SOL GOTHARD, CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
Plaintiff, Sizeler Hammond Square Limited Partnership (hereinafter "Sizeler"), appeals from a summary judgment rendered in favor of defendants, Gulf States Theatres, Inc., n/k/a Hammond Theatres, Inc. (hereinafter "Gulf States") and Hammond *257 Theatres, L.L.C. For the reasons stated more fully herein, we affirm in part and reverse in part the trial court's judgment. The case will also be remanded for further proceedings.

Facts and Procedural History
This action arises out of a dispute concerning the terms of a lease agreement covering a portion of the Hammond Square Shopping Center executed for the operation of a motion picture theatre. A written act of lease dated April 27, 1976 was executed between Hammond Properties, Inc. and others as landlords and Gulf International Cinema Corporation, a predecessor to United Artists Theatre Circuit, Inc., as tenant. Sizeler later assumed all of the landlords' right, title and interest in the lease. In 1992, defendant Gulf States assumed all of the tenant's obligations under the lease. At the time of the transfer, T. George Solomon, Jr. was the president of Gulf States.
The lease was for an initial term of fifteen years. Prior to Gulf States' acquisition of the lease, the parties agreed to amend the lease to change the termination date to February 28, 1993. The lease also contained an option to renew for two five-year periods, provided that the tenant notified the landlord of such intention one year prior to the expiration of the lease term. United Artists timely exercised the first option to extend the initial terms of the lease for five years, or until February 28, 1998.
By letter dated September 9, 1997, Gulf States requested that it be permitted to extend the lease for a second five-year term, or until February 28, 2003[1]. Sizeler did not respond to this request prior to the expiration of the lease term. By letter dated April 28, 1998, Sizeler responded to the request and confirmed that the parties would extend the term of the lease until February 28, 2003[2]. Gulf States continued to operate the theater referred to in the lease agreement. On April 9, 1999, Gulf States notified Sizeler in writing that it would cancel the lease effective June 1, 1999. Gulf States vacated the leased premises on May 13, 1999, and defendant Hammond Theatres, LLC opened a new 10-screen theatre adjacent to the leased premises on May 16, 1999.
On May 26, 1999, Sizeler instituted this suit for declaratory judgment seeking a declaration that Gulf States Theatres, Inc., n/k/a Hammond Theatres, Inc. and Hammond Theaters, LLC were affiliates for purposes of the lease agreement. Plaintiff alleged in this petition that the lease prohibits the tenant or an affiliate of the tenant from operating a movie theatre within 3 miles of the leased premises, and that defendants breached the radius restriction clause of the lease by opening the new theater. Plaintiff also averred that defendant breached the continuous operations *258 clause of the lease agreement by closing the theater in the shopping center prior to the expiration of the lease. Following the trial court's denial of its exception of venue, defendants answered plaintiff's petition asserting that the exercise of the second option to renew was not timely sent, and thus defendants were occupying the leased premises on a month to month basis after the lease expired on February 28, 1998. Defendants asserted that this agreement was properly terminated, and that plaintiff's claims of violations of the lease agreement were without merit.
Sizeler subsequently amended its petition to add a claim for breach of contract and for damages for intentional interference with the lease contract. Plaintiff added as defendant T. George Solomon, Jr., the president of Gulf States, further alleging that defendants Gulf States and Hammond Theaters conspired against Sizeler to breach the lease agreement. By a second supplemental and amending petition, plaintiff asserted claims of unfair trade practices and certain constitutional violations by defendants.
On April 6, 2001, Sizeler filed a Motion for Partial Summary Judgment seeking a determination that Gulf States and Hammond Theatres were affiliates, and that Gulf States breached the lease agreement by violating the radius restriction and continuous operations clauses in the agreement. Gulf States and Hammond Theatres filed an opposition, disputing the claim that they were affiliates, and further asserting that the lease agreement expired on February 28, 1998 because the exercise of the second 5-year renewal option was not timely implemented nor was it accepted by Sizeler during the term of the lease.
The trial court heard oral arguments on this matter on July 16, 2001 and the court rendered judgment in favor of Sizeler. A written judgment was rendered on July 23, 2001, granting Sizeler's motion for partial summary judgment and finding that Gulf States and Hammond Theatres were affiliates by virtue of their common ownership; that Gulf States violated the terms of the lease by relocating its movie theater; and that Gulf States was liable for all past due and accrued rents under the lease and all damages to Sizeler resulting from the breach.
On July 27, 2001, defendants filed a rehearing on the basis that the trial court had failed to rule on whether the term of the lease had been timely extended or, alternatively, reconducted. Defendants argued that since Gulf States did not timely tender its request for renewal of the lease, and Sizeler did not accept that request until after the lease term had expired, the lease had been reconducted on a month-to-month basis. Therefore, they argued that Gulf States gave proper notice that it was vacating the premises, and did not breach the lease by discontinuing operation of the theatre.
On August 2, 2001, defendants filed a Motion for Partial Summary Judgment seeking a ruling that the lease term had not been extended by the parties beyond the termination date of February 28, 1998, and that the lease was reconducted on a month-to-month basis. Defendants argued that there was no issue of fact as to the breach of contract claims asserted by plaintiff. Defendants further sought dismissal of all tort claims asserted by Sizeler, on the basis that there was no intention to violate the lease as defendants believed the lease had been reconducted on a month-to-month basis.
Sizeler opposed this motion on the grounds that the lease had been extended by the exercise of the option to renew and further that summary judgment on the tort claims was premature as discovery was not yet complete. Thereafter, defendants *259 filed a supplement to the summary judgment motion attaching the affidavit of George Solomon on behalf of Gulf States and another by his father, T.G. Solomon, on behalf of Hammond Theatres, LLC. The affiants stated that they did not conspire to cause Gulf States to breach the lease, and that the conduct of Gulf States in terminating the lease and vacating the premises was based on the good faith belief that the lease had been reconducted to a month-to-month agreement.
The trial court granted the motion for rehearing on the basis that the court had not yet heard the issue of any possible reconduction, and that that issue must be decided before defendants could be found in violation of the lease. The trial court held a hearing on the reconduction issue on March 13, 2002. On March 18, 2002, the court rendered judgment granting defendants' motion for partial summary judgment and, upon rehearing, denying plaintiff's motion for partial summary judgment. The trial court further designated the judgment as final for the purposes of this appeal.
In its reasons for judgment, the trial court held that the lease was not renewed, but had been reconducted on a month-to-month basis. The trial court also dismissed all of Sizeler's contract and tort claims.
Sizeler now appeals from this judgment, arguing that the trial court erred in reversing itself on rehearing and in granting defendants' motion for partial summary judgment dismissing both the contract and tort claims.

Law and Discussion
Summary judgments are reviewed on appeal de novo. Smith v. Our Lady of the Lake Hosp., 639 So.2d 730, 750 (La.1994); Moody v. United Nat'l Ins. Co., 98-287 (La.App. 5 Cir. 9/29/98), 743 So.2d 680, writ denied, 98-2713 (La.12/18/98), 734 So.2d 639.
An appellate court thus asks the same questions as does the trial court in determining whether summary judgment is appropriate: whether there is any genuine issue of material fact, and whether the mover-appellant is entitled to judgment as a matter of law. Smith, supra; Magnon v. Collins, 98-2822 (La.7/7/99), 739 So.2d 191.
The rules governing summary judgments are found in La.C.C.P. art. 966 and 967. A motion for summary judgment shall only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law." La. C.C.P. art 966(B).
An adverse party to a supported motion for summary judgment may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue of material fact for trial. La.C.C.P. art. 967; Townley v. City of Iowa, 97-493 (La.App. 3 Cir. 10/29/97), 702 So.2d 323, 326.
It is well settled in our law that legal reconduction is a continuation of the lease under the same conditions of the old lease except the term. The new term is month to month. La.C.C.Arts. 2685 and 2689; 210 Baronne Street Ltd. v. Pisano, 526 So.2d 345 (La.App. 4th Cir.1988). Reconduction is presumed where the "tenant ... should continue in possession for a week after his lease has expired, without any opposition being made thereto by the lessor...." La.C.C.Art. 2689
However, the presumption of reconduction is inoperative in the face of a clear *260 intention of the parties to the contrary. Kogos v. Lemann, 285 So.2d 548 (La.App. 4th Cir.1973), writ denied, 288 So.2d 648 (La.1974); Divincenti v. Redondo, 486 So.2d 959 (La.App. 1st Cir.1986); Talambas v. Louisiana State Bd. of Education., 401 So.2d 1051 (La.App. 3rd Cir.1981).
The duration and the conditions of leases are generally regulated by contract, or by mutual consent. La.Civ.Code art. 2684. The parties must abide by the agreement as fixed at the time of the lease. La.Civ.Code art. 2686. When the lessee provides written notice of his intention to renew, but that notice is untimely, renewal of the lease under an option to renew is not valid. Hidalgo Motors, Inc. v. Opelousas Courtesy Motors, Inc., 576 So.2d 1086 (La.App. 3 Cir.1991). See also, Southern Ventures Corp. v. Texaco, Inc., 372 So.2d 1228 (La.1979), where the supreme court found that a lease agreement, which converted to a month to month lease after the expiration of the initial lease period, was not renewed where notice of the lessee's election to exercise the renewal option did not comply with the lease provision requiring such notice no later than sixty days prior to the expiration of the initial term.
In the present case, the lease agreement provided that the duration of the lease was for fifteen years or until February 28, 1993. The lease also contained an option to renew for two five-year periods, provided that the tenant "... shall give Landlord notice by registered mail of its intention to exercise such right and privilege not less than 12 months prior to the commencement of each option." Defendants' predecessor exercised the first option to extend the initial terms of the lease for five years, or until February 28, 1998. The second option to renew should have been given to Sizeler no later than February 28, 1997.
There is no dispute that Gulf States failed to give the landlord notice of its intention to renew the lease until September 9, 1997, less than twelve months prior to the expiration of the term as required by the lease. The record indicates that Sizeler failed to indicate its acquiescence to this offer during the duration of the lease agreement, but sent a letter dated April 28, 1998 confirming the exercise of the option to renew.
Sizeler contends that the September 9, 1997 letter offering to renew the agreement constituted an exercise of the option to renew which had the effect of extending the duration of the lease for an additional five years, or until February 28, 2003. However, by the clear terms of the agreement, the parties stated that the lease was to expire on February 28, 1998 unless the tenant exercised the option to renew at least 12 months prior to the expiration date. Gulf States failed to comply with this provision of the lease. The letter sent by Gulf States on September 9, 1997 was insufficient to renew the lease as the deadline to renew had passed. As the tenant did not timely renew the lease, the lease expired on its own terms and began the following day as a month to month lease. Heirs of Boudreaux v. Payne, 00-292 (La. App. 3 Cir. 12/6/00), 773 So.2d 894, 897 writ denied, 00-3528 (La.2/16/01), 786 So.2d 102.
Sizeler contends that no formal acceptance of the tenant's offer to renew was necessary to extend the terms of the lease. In support of this position, Sizeler relies on a provision of the lease agreement which allows the landlord to waive the untimeliness of the exercise of the option. That provision provides as follows:
[T]he failure of Landlord to insist in any one or more instance upon a strict performance of any covenant of this *261 lease or to exercise any option or right herein contained shall not be construed as a waiver or relinquishment for the future of such covenant, right or option, but the same shall remain in full force and effect, unless the contrary is expressed in writing by the Landlord ...
In Southern Ventures Corp. v. Texaco, Inc., supra, a case relied on by the trial court, the exercise of the option to renew was untimely sent by the tenant and the landlord did not respond to this request. The lease agreement in that case did not allow the landlord to waive an untimely exercise of a renewal, and the court held the lease had therefore terminated. Although the lease agreement in the record before us contains a provision allowing a waiver of an untimely request to renew and the landlord in this case attempted to allow the renewal, the attempted waiver failed to operate as a renewal of the lease as it was not given prior to the expiration of the agreement.
In fact, on the date the lease was set to expire, Sizeler had not yet notified Gulf States that it had received and approved of its request to renew the lease. Further, at the time Gulf States requested a renewal, it no longer had right or privilege to automatically renew the lease according to the clear terms of the lease agreement. Absent a waiver, Sizeler retained the right to insist on strict performance of the lease terms. Thus, as of the expiration date of the lease agreement on February 28, 1998, there was no clear agreement between the parties as to whether the lease would be renewed, and without a valid exercise of the option to renew, the lease agreement terminated on this date.
Our review of the facts of this case shows that Gulf States' September 9, 1997 letter amounted to an offer to renew which was not accepted by Sizeler during the term of the lease. Sizeler did not notify the tenant of its acceptance of its offer to renew until two months after the expiration date of the lease. Thus, at the time Sizeler confirmed Gulf States' request to renew the lease, the lease agreement had already expired by its own terms.
Notably, the record shows that prior to its approval of the tenant's request to renew the lease, Sizeler proposed an amendment to the lease which it forwarded to Gulf States. It is reasonable to conclude from the fact that Sizeler was attempting to negotiate an amendment to the lease that there had been no automatic extension of the terms of the lease. Rather, by its letter of April 28, 1998, Sizeler extended an offer to Gulf States to extend the lease in lieu of any amendment thereto, and there is no factual indication that this offer was accepted by Gulf States.
Sizeler also contends that the lease agreement provides that the parties specifically opted out of provisions of reconduction. The agreement provides as follows:

HOLDING OVER
That this lease and the tenancy hereby created shall cease and determine at the end of the original terms hereof or any extension or renewal thereof (if any) whichever shall last occur, without the necessity of any notice from either Landlord or Tenant to terminate the same, and Tenant hereby waives notice to remove and agrees that Landlord shall be entitled to the benefit of all provisions of law respecting the summary recovery of possession of premises from a Tenant holding over to the same extent as if statutory notice were given.
Sizeler contends that based on these provisions, the trial court erred in concluding that the lease had been reconducted. We disagree. The cited provisions relieve the landlord of the necessity of complying with the provisions of La. C.C. art. 2686 *262 governing notice of termination. Nothing in this provision states that the parties opted out of reconduction. Although the lease agreement contained no specific provisions regarding reconduction of the lease, the facts of this case indicate that the tenant remained in the leased premises after the expiration of the fixed duration of the lease. Thus, reconduction is established by law as provided for in La. C.C. art. 2689, and the lease is presumed to have continued on a month to month basis.
Under the circumstances presented herein, we conclude that Gulf States established that their option to renew was not timely exercised. In response, Sizeler failed to offer sufficient proof that the untimeliness of the exercise of the option was waived and that the lease was renewed beyond the duration specified in the agreement. As the exercise of the option was not properly given, the lease expired by its own terms. Any effort by the landlord to enforce this option beyond the expiration of the agreement was without effect. As Gulf States remained in the leased premises beyond the expiration of the lease agreement, the lease was reconducted pursuant to Louisiana law. The record further shows that Gulf States gave Sizeler timely notice that it desired to terminate the monthly lease agreement.
Thus, based on our conclusion that defendants properly terminated the reconduction of the lease, we find no remaining issues of fact as to whether there has been a breach of the lease agreement. Our review of the record indicates that Sizeler has failed to present sufficient proof that factual issues exist as to whether defendants breached the contractual agreement by discontinuing operation of the theatre and opening a new theatre.
With regard to Sizeler's claims of intentional interference with the contract of lease and its claims of unfair trade practices and constitutional violations, we find issues of fact as to these claims that preclude summary judgment in this case. As to the tort claims, although defendants submitted affidavits stating their intentions in terminating the lease agreement, these affidavits are merely conclusory and fail to provide facts to support their claim. Further, summary judgment is rarely appropriate to resolve issues such as intent or motive. National Gypsum Co. v. Ace Wholesale, 96-215 (La.App. 5 Cir. 11/26/96), 685 So.2d 306, writ denied, 96-3055 (La.2/7/97), 688 So.2d 502. As to Sizeler's other claims, defendants failed to submit supporting documentation with their summary judgment which would show that they are entitled to judgment as a matter of law.
Additionally, the record indicates that discovery on these claims was ongoing and that the trial court failed to rule on plaintiff's motion to compel based on the ruling on the issue of reconduction. However, Sizeler's tort claims as well as its trade practices claim and claim of constitutional violations are not extinguished by the trial court's ruling that the lease agreement was reconducted rather than renewed. Sizeler is entitled to conduct discovery in this matter to ascertain contested issues of fact. We therefore conclude that the trial court erred in granting summary judgment as to these claims, and that portion of the summary judgment dismissing Sizeler's claims against defendants is reversed. Based on this ruling, the case must be remanded to the trial court for further proceedings.

Conclusion
Accordingly, for the reasons assigned herein, we affirm the judgment of the trial court granting partial summary judgment in favor of defendants dismissing plaintiff's claims of breach of contract against them. However, we reverse that portion of the *263 judgment which dismisses plaintiff's tort claims asserted in its first supplemental petition and it claims of unfair trade practices and constitutional violations asserted in its second supplemental petition. The case is further remanded to the trial court for further proceedings consistent herewith. Each party is to bear all its own costs of this appeal.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
GOTHARD, J., dissents with reasons.
GOTHARD, J., dissents with reasons.
I dissent with the majority opinion insofar as it finds that the lease between the parties was not renewed for an additional term.
Parties are free to contract for any object that is lawful, possible, and determined or determinable. La. C.C. art 1971. A contract may be modified or dissolved through mutual consent or by law. LSA-C.C. art. 1983; DÁntonio v. Simone, 94-798, (La.App. 5 Cir.3/15/95), 653 So.2d 678; River Oaks, Inc. v. Blue Cross of Louisiana, 595 So.2d 785 (La.App. 5 Cir. 1992), writ denied 598 So.2d 361 (La.1992). Modification of a contract can be presumed by silence, inaction or implication. River Oaks, Inc., supra.
I believe that the lessee's action in requesting the extension, and the lessor's assertion that the lease had been extended, albeit after the time provided, evinces the intent of the parties to extend the lease for another five years.
I further believe the trial court's reliance on Southern Ventures Corp. v. Texaco, Inc., 372 So.2d 1228 (La.1979) to be misplaced. In that case, the original lease itself provided that any alteration concerning the tenancy of lessee after expiration or termination of the lease had to be in writing. The lessee gave untimely notice, and the lessor did nothing more than collect the rent. After stating that the mere collection of rents did not evince an intent to renew the lease, the court found that lessee had "failed to show that there was a renewal of the lease for five years by either implied or express consent." In this matter, after the lessee gave notice of intent to renew, not only did the lessor continue to collect the rent, it also informed lessee that the lease was renewed for the additional five-year period.
I therefore respectfully dissent from that portion of the majority opinion that affirms the grant of partial summary judgment, in favor of defendants, dismissing plaintiff's claims of breach of contract against said defendants.
NOTES
[1] The letter from George Solomon to Marc Dusang at Sizeler stated as follows:

Due to an oversight in the Hammond Square Theatre lease the notice to exercise our option under section five (5), paragraph (e) was missed.
We would like to extend the lease for the second five (5) year option period under the same terms and conditions as set forth in paragraph (e).
[2] The letter to George Solomon from Marc Dusan stated in part as follows:

In a discussion recently with Tom Davidson, he told me that you indicated to him that you were not going to sign the proposed lease amendment agreement which accompanied our March 13 letter to you. Accordingly, we understand and confirm that you will simply continue to occupy the premises under the existing lease through the expiration of the extended term ending February 28, 2003, by virtue of your exercise of the second five year option per your letter of September 9, 1997.