JAMES C. GULOTTA, Judge, Pro Tempore.
12Richards Clearview L.L.C. (Clearview) appeals from a judgment denying its Rule to Evict Metairie PJ’s (PJ’s).[1] Clearview’s Rule to Evict is based on the tenant’s failure to timely exercise, in writing in accordance with the lease terms, its intent to renew or extend the lease. According to Clearview, Hurricane Katrina interrupted business at the Mall. But, within a few weeks of the Mali’s closure, Clearview’s agent, Blaine Gahagan, contacted PJ’s owner, Joseph LaHatte, Jr., (LaHatte). When Gahagan inquired if PJ’s would immediately reopen and whether PJ’s intended to renew the lease, LaHatte replied affirmatively. He cleaned the | hurricane damage, replaced the perishables, and replaced machinery. On June 1, 2006, PJ’s notified Clearview in writing that it intended to renew the lease, which was due to expire on its terms on November 4, 2006. On October 8, 2006, Clearview requested PJ’s to vacate the premises by October 31, 2006.
PJ’s seeks to have this Court declare that, “in consideration of the totality of extraordinary circumstances and principles of equity, petitioner had sufficiently notified defendants of his intention to renew the lease and relied on their tacit acceptance of the tenants notice.”
After a hearing on the petition for preliminary and permanent injunctions and the Rule to Evict, the trial judge denied the eviction of PJ’s. Clearview appeals.
In its Reasons for Judgment, the court found that delivery of the premises took place on August 6, 2001; that the expiration of the original lease would have occurred on November 4, 2006; and that PJ’s gave written notice to renew on June 1, 2006, 157 days prior to expiration of the lease.
Section 12.24 of the lease sets forth the crucial option to renew:
If the Original Tenant shall, during the whole of said term ... well and faithfully keep and perform the terms, covenants, and conditions in this Lease ... the Original Tenant shall have the op *550 tion to extend the term of this Lease ... by giving Landlord written notice of Original Tenant’s exercise of said option to extend the term at least ... (180) days before the beginning of the additional period for which the term hereof is to be extended by the exercise of such option. If the Original Tenant gives such notice, this Lease shall be so extended automatically without execution of an extension or renewal lease.
[[Image here]]
Among the documents in evidence was a Notice of Eviction dated September 22, 2006; Notices to Vacate dated October 3, 2006 and October 11, 2006; an e-mail dated September 21, 2006 to Clearview’s attorney detailing PJ’s late rent payments; and a letter from LaHatte to Clearview’s attorney, stating that | ¿there had been a verbal agreement to renew the lease. PJ’s introduced a letter dated June 1, 2006 regarding PJ’s intent to renew.
At the hearing, Tara Lubrano, general manager at Clearview Mall, testified she had been assistant manager for eight years prior to becoming manager and is familiar with the mall leases. She stated the premises were delivered to PJ’s on June 28, 2001, and because the lease allowed the lessee 90 days from that date to open for business, the original term of the lease expired in five years, on September 28, 2006. Ms. Lubrano testified that, under the lease, written notice of intent to exercise the option to renew had to be received 180 days before the lease term expired, and that no written notice from PJ’s was received.
It was Clearview’s position that PJ’s was in default under the lease when it failed to pay the minimal annual rent and other sums payable under the lease three or more times in any periods of 12 consecutive months. PJ’s opened for business sometime in September after Katrina. PJ’s had not paid the rent on time during 2006. The rent was due on the first of every month. Lubrano stated that there were occasions when she had to go to PJ’s to collect the rent. According to Lubrano, in some months the rent was not in the correct amount. Lubrano only became aware of PJ’s rent status since she became general manager in 2006. She was never instructed not to collect rent from PJ’s. Lubrano agreed that according to the lease, the written notice could be hand delivered, or delivered by electronic means, certified or registered mail, but that she had neither seen nor received LaHatte’s letter of June 1, 2006, stating PJ’s intention to renew.
A few months before expiration of the lease, Lubrano phoned PJ’s owner and asked him if he intended to renew. She knew written notice was required, but “called those tenants to see if they ... still wanted to stay in the mall.” Lubrano | ^agreed that this was “verbal” notice to Clearview that LaHatte was interested in renewing the lease. She requested that LaHatte put the notice in writing.
LaHatte, an attorney, testified that a couple of weeks after Katrina, the mall’s manager called several times begging that he re-open the business. LaHatte testified that his copy of the lease was at his law office, which was flooded after Katrina. LaHatte went to great personal expense to re-open, and had to replace the hot water heater, coffee machines, all the computers, two coolers, as well as the products. At the request of the mall, he opened PJ’s at the end of September, and drove in to bring supplies every day from Baton Rouge, where he had been living. La-Hatte testified that he never received any of Clearview’s letters requesting him to vacate the premises.
Additionally, LaHatte introduced a letter from Stirling Properties dated August *551 6, 2001, as evidence of the date of delivery of the premises. According to Ms. Lubra-no, Stirling Properties was a leasing company that had assisted PJ’s in leasing the space in the mall. This date conflicts with Ms. Lubrano’s testimony that the date of delivery was on June 28, 2001. The trial judge’s reasons for judgment reflect that he concluded that August 6, 2001 was the date of delivery, and we find no manifest error in that conclusion.
It is clear that LaHatte, on behalf of PJ’s, orally informed Clearview’s managers of his express intent to renew the lease. It is equally clear that PJ’s failed to notify Clearview of its intent to renew the lease in writing within 180 days before termination of the lease. Rather, the written notice was given to Clearview 157 days before termination of the lease.
Clearview relies on Southern Ventures Corp. v. Texaco, 372 So.2d 1228 (La.1979) and Sizeler Hammond Square Limited Partnership v. Gulf States Theatres Inc., 02-759 (La.App. 5 Cir. 12/11/02), 836 So.2d 256, writ denied, 03-0070 (La.3/21/03), 840 So.2d 552, for the principle that if a lease provides that its renewal shall only occur upon timely written notice by the lessee, and the lessee gives that notice in an untimely manner, any such notice is invalid and does not renew the lease.
In Southern Ventures, the lease provided that notice of intention to exercise an option to renew had to be given in writing no less than 60 days prior to the expiration of the initial term. The lessee sent an untimely notice, and continued to occupy the property and pay rent after expiration of the lease. The issue in that case was whether or not the lessor waived the lease requirement by continuing to accept rental payments after the expiration of the initial term. The Supreme Court held that it did not, noting there was no provision in that lease which would obligate the lessor to accept late notice, and that the lessee had no right to retain possession on a month-to-month basis.
In Sizeler, supra, the lessee claimed that the lease had terminated when it sent a late written notice of its intent to renew the lease. This Court found that the lessee did not timely exercise the option to renew and concluded that the lease had expired by its own terms. Further, we concluded that the lessee failed to establish that the landlord waived the untimely exercise of the option to renew. Id. at 260-261.
The issue presented by Clearview in our case is whether the lease expired on its terms when PJ’s written notice of intent to renew was not tendered 180 days from expiration of the lease as required in the lease. It is clear that PJ’s simply failed to comply with the requirements of the lease term. Southern Ventures, supra and Siz-eler, supra.
Although the record demonstrates empathy and equitable considerations for PJ’s, nonetheless equity cannot be applied in the face of clear legal failure by PJ’s |7to comply with the terms of the lease. Having so concluded, we reverse and set aside the judgment of the trial court denying Clearview’s Rule to Evict PJ’s from the leased premises. Accordingly, Clearview’s Rule to Evict PJ’s is granted.

REVERSED AND RENDERED.

. seeks a Temporary Restraining Order and Preliminary and Permanent Injunction against Clearview from Clearview’s Rule to Evict PJ’s from Clearview mall.