GUIDRY, J.
I?As part of ongoing litigation in this lease dispute, the lessor of a tract of land appeals a judgment denying its petition to evict the lessee based on the lessee’s failure to timely exercise the option to renew the subject lease, and the lessee has answered the appeal,
FACTS AND PROCEDURAL HISTORY
In the fall of 2005, Constantin Land Trust (“CLT”) entered into a ten-year lease agreement with Pitre Industries, LLC for the lease of 2.35 acres of land in Lafourche Parish, known as the “Texaco Dock.” According to the lease agreement, the primary term of the lease began on October 1, 2005, with the lessee, Pitre Industries, being granted the option to renew the leasé for two additional terms of ten years each.
In December 2010, the parties executed a partial termination of the lease agreement, wherein Pitre Industries released approximately one-half of the leased property, the southern portion, which CLT, in turn, leased to a third party. Then, on October 23, 2015, CLT filed the instant action for eviction, alleging that due to Pitre Industries’ failure to give timely written notice of its decision to exercise the option to renew the lease, CLT chose not to renew the lease on the retained portion of the leased property and sought return of the property. CLT further alleged that despite issuance of a notice to vacate, Pitre Industries refused to vacate and continued to occupy and use and the leased property.
In conjunction with the petition for eviction, CLT also filed a statement notifying the trial court that other litigation was pending in a different division of the same court. In that litigation, CLT was also seeking termination of the ¡lease, but based on Pitre Industries’ alleged breach of the terms of the lease agreement.
In response to these filings, Pitre Industries filed a motion to transfer and [ .¡reassign the eviction proceeding to the same division of the trial court in which the breach of lease proceedings and other actions regarding the leased property were pending.[1] By a judgment signed December 7,.2015, the eviction action was re-allotted and transferred to the same division of the trial court in which all the prior matters involving, the same parties and the leased property were pending.
Prior to the transfer .of the eviction action, Pitre Industries answered the petition for eviction raising several exceptions and affirmative defenses. After the matter was re-allotted and transferred, the trial court held a hearing on the exceptions raised by Pitre Industries and on the merits of CLT’s eviction action. At the hearing, the trial court overruled the objections of -lis pendens, lack of procedural capacity, and res judicata raised in the exceptions filed by Pitre Industries, but deferred ruling on the objection of no cause of action. The trial court then received testimony and documentary evidence on the merits of the eviction action, following which it took the matter under advisement.
On May 5, 2016, the trial court issued an oral ruling denying the petition for eviction, finding as follows:
While I do find that there was a clear term in the lease and that the renewal was not filed in a timely basis under that lease, I also find that CLT, by the interference and harassment of clients and customers of Pitre’s, interrupted their *1092 peaceful possession—constructively interrupted their peaceful possession. And for that reason the eviction is hereby denied.
The trial court then signed a written judgment consistent with its oral ruling on June 14, 2016, which CLT appeals, and Pitre Industries has filed an answer to the appeal.
ASSIGNMENTS OP ERROR
Contending that the June 14, 2016 judgment is contrary to law and is manifestly erroneous, CLT alleges the following:
|41) The trial court committed manifest error in denying CLT’s Petition for Eviction as the evidence and testimony proved that Pitre Industries faded to provide timely written notice of its intent to renew the lease between it and CLT.
2) The trial court committed manifest error by concluding that constructive interruption of peaceful possession was grounds for denying CLT’s eviction action ... when there is no evidence of this alleged interruption in the record.
3) The trial court committed manifest error by denying CLT’s eviction action based on testimony presented in a separate ordinary proceeding seeking damages [for disturbance] of peaceful possession.
Pitre Industries has answered the appeal to assert that in the event this court should find that the trial court improperly dismissed the eviction action based on the finding that CLT had constructively interrupted Pitre Industries’ peaceful possession of the property, the eviction should nonetheless be denied because: (1) CLT’s acceptance of rental payments after the alleged expiration of the lease term effected a renewal of the lease;[2] and (2) ambiguity existed in the lease agreement regarding the term and the time for exercising the option to renew.
DISCUSSION
A judgment either granting or denying eviction is appealable. Terrebonne Parish Port Commission v. Eagle Dry Dock & Marine Repairs, L.L.C., 14-0010, p. 13 (La. App. 1st Cir. 7/7/15), 2015 WL 4094331, at *7 (unpublished opinion). In this case, after expressly finding that Pitre Industries did not timely exercise the option to renew the lease on the subject property, the trial court nonetheless denied the action to evict based on its determination that CLT had wrongfully disturbed Pitre Industries’ peaceful possession of the property. In its second and third assignments of error, CLT contests the trial court making this determination and rendering judgment based on evidence not of record in the proceedings before the Rcourt. We find merit in this assertion.
The only evidence offered at the eviction hearing were copies of the petition for eviction, the lease in dispute, letters between the parties, rental payment checks from Pitre Industries, and the testimony of Elmo Pitre III, the managing member of Pitre Industries, and James Constantin Jr., one of the co-owners of the leased property owned by CLT.
At the eviction hearing, Pitre Industries asked Mr. Constantin to acknowledge that three other legal actions had been initiated by CLT and were pending that sought to terminate and/or enjoin enforcement of the lease in dispute. When CLT attempted to object to this line of questioning, the trial court responded, “I think he’s trying to *1093 argue that the suits filed by Constantin have interrupted the term of the lease so I’m going to allow him to ask the questions.” Mr. Constantin then acknowledged that the three other actions had been filed and were pending. Following that line of questioning, Pitre Industries asked the trial court to take judicial notice of the three other legal actions, which were pending before the same court.
One of the principal obligations a lessor has to his lessee is to protect the lessee’s peaceful possession for the duration of the lease. La. C.C. art. 2682; McCurdy v. Bloom’s Inc., 39,854, p. 7 (La. App. 2d Cir. 6/29/05), 907 So.2d 896, 901. Specifically, the lessor warrants the lessee’s peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right to possession of, or any other right in the thing. La. C.C. art. 2700. If a disturbance is such that the lessee can no longer use the premises for the intended use, the lessor has breached its obligation to maintain the lessee in peaceful possession. McCurdy, 39,854 at p. 7, 907 So.2d at 901. However, an action or proceeding filed adversely to a possessor (in this instance, a lessee) is not a disturbance. Naquin v. Bollinger Shipyards, Inc., 13-1638, p. 9 (La. App. 1st Cir. 5/2/14), 147 So.3d 207, 212, writ denied, 14-1091 (La. 9/12/14), 148 So.3d 933; see also La. C.C.P. art. 3659 and Union Bank v. Cottonport Insurance Exchange, 630 So.2d 975, 977 (La. App. 3d Cir.), writ denied, 637 So.2d 1049 (La. 1994) (wherein the court found that because the lessee was never denied access to the building and was never told to vacate the premises, its peaceful possession was never disturbed, despite an action for executory process being instituted and an order signed for the seizure and sale of the property). Thus, the breach of lease and other proceedings instituted by CLT against Pitre Industries, the possessor of the property, cannot constitute disturbances of Pitre Industries’ peaceful possession.
Therefore, the only grounds for a finding of disturbance of the warranty of peaceful possession would be the interference and harassment of Pitre Industries’ customers, as referred to by the trial court in its oral reasons for judgment, but no evidence of interference or harassment of Pitre Industries’ customers appears in the record before us. As argued by CLT, it is assumed that the trial court’s reference to the interference and harassment of Pitre Industries’ clients and customers is based on information presented in the other suits pending before the same court, of which the court was asked to take judicial notice.
Although a court may take judicial notice of its own proceedings, Pinegar v. Harris, 06-2489, p. 3 (La. App. 1 Cir. 5/4/07), 961 So.2d 1246, 1249, a court may not take judicial notice of disputed issues. Weatherly v. Optimum Asset Management, Inc., 04-2734, p. 5 (La. App. 1st Cir. 12/22/05), 928 So.2d 118, 122; see also La. C.E. arts. 201 and 202. As the other suits were still pending before the trial court, they were not final adjudications of which the court could take judicial notice. Hence, the trial court clearly erred in relying on such evidence to render judgment in this matter based on the theory of constructive interruption of peaceful 17possession.[3]
As such, we will now consider CLT’s remaining contention that the trial court erred in denying the petition for eviction when the evidence established that Pitre Industries failed to provide timely written notice of its intent to renew the lease. In conjunction with this contention, we will *1094 also consider Pitre Industries’ contentions that eviction was properly denied because the lease- provisions regarding the term and time to exercise the renewal option are ambiguous and- because CLT’s receipt of rental payments after expiration of the primary term of the lease served to renew the lease.
Interpretation of the Lease Agreement
A lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay. La. C.C. art. 2668; KM, Inc. v. Weil Cleaners, Inc., 50,209, p. 6 (La. App. 2d Cir. 1/13/16), 185 So.3d 112, 116-17. The term of the lease may be agreed to by the parties or fixed by law. La. C.C, art. 2678. Thus, agreement as to the term is not an essential element of a lease. Southern Treats, Inc. v. Titan Properties, L.L.C., 40,873, p. 11 (La. App. 2d Cir. 4/19/06), 927 So.2d 677, 683, writ denied, 06-1170 (La. 9/15/06), 936 So.2d 1271.
Where factual findings are pertinent to the interpretation of a contract, those factual findings are not to be disturbed unless manifest error is shown. However, when appellate review is not premised upon any factual findings made at the trial level, but is, instead, based upon an independent review and examination of the contract on its face, the manifest error rule does not apply. In such cases, appellate review of questions of law is simply whether the trial court was legally correct or [^legally incorrect.- Porter v. Miller, 00-1436, p. 3 (La. App. 3d Cir. 2/28/01), 782 So.2d 1123, 1126.
In the matter before us, the lease agreement provides the following regarding the term of the lease and the option to renew:
1. The primary term of this lease shall be for a period of ten (10) - year(s), beginning on the l day of October, 2005, together with the right and option to renew for two (2) additional terms of ten (10) years, as hereinafter provided....
2. [Consideration/rent to be paid under the agreement is an annual sum of $6,000.00.]
3. For the same consideration, Lessee is hereby granted the right and option to renew the Lease for two (2) additional periods of ten (10) years, hereinafter sometimes called “the second ten (10) yéar period”, following the expiration of the' original term hereof for a total term not to exceed thirty (30) years from the commencement of the original term hereof. ... In the event the Lessee shall elect to exercise such option for the renewal and/or extension of this lease, as hereinabove set' forth, it may do so by giving written notice to Lessor mailed (postmarked) not later than ninety (90) days prior to the expiration of the original term. Said notice shall be mailed to Con-stantin Land Trust, 1305 Edwards, New Braunfels, Texas 78132.
Pitre Industries argues that the use of the phrase “primary term” in describing the initial term of the lease in paragraph one and the use of the phrase “original term” in reference to the option to renew in paragraph three, without any description or definition of the latter phrase, creates an ambiguity in the agreement that should be construed in its favor.[4]
The words of a contract .must be given their generally prevailing meaning. La. C.C. art. 2047. Words susceptible of *1095 different meanings must be interpreted as having the meaning that best conforms to the object of the contract. La. C.C. art. 2048. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective. La. 1BC.C. art. 2049. Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole. La. C.C. art. 2050. Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Lobell v. Rosenberg, 15-0247, p. 8 (La. 10/14/15), 186 So.3d 83, 89.
In this case, paragraph one of the lease agreement expressly states that the option to renew the lease agreement shall be “as hereinafter provided.” The only other provision in the lease agreement after paragraph one that mentions the option to renew is contained in paragraph three of the agreement. As’ mentioned above, in delineating the option to renew, the phrase “primary term” is not’ used in paragraph three, but instead the phrase “original term” is used. According to Webster’s New College Dictionary, “primary” is defined as “[h]appening first in time or sequence: ORIGINAL” and “original” is defined as “[preceding all others in time: FIRST.” Webster’s New College Dictionary 792 and 898 (3d ed. 2008).
The rules of construction do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms express with sufficient clearness the parties’ intent. The fact that one party may create a dispute about the meaning of a contractual provision does not render the provision ambiguous. Campbell v. Melton, 01-2578, pp. 8-9 (La. 5/14/02), 817 So.2d 69, 76. Considering the generally prevailing meanings of the words “primary” and “original,” and further considering paragraph three in light of paragraph one as expressly directed in the lease agreement itself, it is not only logical, but proper to construe the phrase “original term” in the lease agreement as having the same meaning as “primary term.”
Moreover, we do not find that the use of the word “may”- in paragraph three |! nrenders the act of . giving notice discretionary. Instead, reading the provision as a whole, it is clear that the discretionary act referred to is that of exercising the option to renew and not that of giving notice, as the only act to which the phrase “may do so” could refer to is the preceding statement of “[i]n the event the Lessee shall elect to exercise such option.” As written, the sentence plainly conveys that the discretionary act to be “done” is that of electing to exercise the option to renew. Thus, we find that a proper interpretation of the applicable provisions of the lease .agreement is that in order to exercise the option to renew the subject lease agreement, written notice of the election to .exercise the option had to be mailed (postmarked) not later than 90 days prior to the expiration of the original term, with the original term being synonymous with the phrase “primary term” used in paragraph one of the lease agreement. Therefore, Pitre Industries was required, under the applicable provisions, to have mailed written notice by July 2, 2015, which undisputedly was not done in this case.[5]
*1096 We recognize that lease cancellation is not favored in Louisiana and that a lease should only be dissolved when a lessor provides clear entitlement to dissolution. KM, Inc., 50,209 at p. 10, 185 So.3d at 119. Moreover, we further recognize the principle of judicial control of leases, which is an equitable doctrine by which the courts will deny cancellation of the lease when the lessee’s breach is of minor importance, is caused by no fault of his own, or is based on a good faith mistake of fact. Western Sizzlin Corporation v. Greenway, 36,088, pp. 13-14 (La. App. 2d Cir. 6/12/02), 821 So.2d 594, 601, writ denied, 02-2326 (La. 11/15/02), 829 So.2d 436.
However, in Louisiana, the option or right to renew a lease is never |npresumed. Hidalgo Motors, Inc. v. Opelousas Courtesy Motors, Inc., 576 So.2d 1086, 1087 (La. App. 3d Cir. 1991). Further, it has been held that time is of the essence in the renewal of a lease. Giraud v. Clark, 354 So.2d 752, 754 (La. App. 4th Cir. 1978). Thus, while the use of a different method of transmission of notice of renewal than that contemplated by the lease will not make the notice defective—if the substituted method of transmission performs the same function and serves the same purpose as the authorized method— such notice, nevertheless, will only be deemed effective if the notice is timely received. Woods v. Cities Service Oil Company, 142 So.2d 168, 169 (La. App. 3d Cir. 1962).
Circumstances similar to the matter before us were presented in American Branch Building Corporation v. Bozeman, 543 So.2d 1114 (La. App. 1st Cir.), writ denied, 548 So.2d 1231 (La. 1989). In that case, there was an ongoing dispute between the parties to a sublease as to whether a binding sublease agreement between the parties even existed. The matter was litigated, and both the trial court and the appellate court rendered judgment in favor of the defendant finding that an effective sublease existed between the parties. The plaintiff even filed a writ application with the Louisiana Supreme Court, which was subsequently denied; however, during the course of the litigation, the sublease expired by its express terms. American Branch Building Corporation, 543 So.2d at 1115.
The sublease required the defendant to give written notice at least 90 days prior to the termination of the original term of the lease. Instead, the defendant gave notice of his desire to renew the sublease 234 days after the termination of the original term of the lease. American Branch Building Corporation, 543 So.2d at 1115-16. Despite the defendant’s argument that because the plaintiff was refusing to recognize the validity of the sublease (as demonstrated by the litigation between the parties), giving notice to the plaintiff would have been a vain and useless thing, hathis court still held that untimely written notification does not relate back so as to make it timely. Thus, it was decreed that it was incumbent on the defendant to send timely written notice in order to maintain his option to renew the sublease, and having failed to do so, this court affirmed the finding that the sublease was terminated because the option to renew had not been timely exercised. American Branch Building Corporation, 543 So.2d at 1116-17.
Consistent with the holding of this court in American Branch Building Corporation, other courts, including the Louisiana Supreme Court, have similarly held that with respect to the renewal of a lease agreement, there must be compliance with the time dictates for exercising an option to renew. See Southern Ventures Corporation v. Texaco, Inc., 372 So.2d 1228, 1230 (La. 1979); Metairie PJ’s, Inc. v. Richards Clearview, L.L.C., 07-188, pp. 6-7 (La. App. 5th Cir. 8/28/07), 963 So.2d 548, 551, *1097 writ denied, 07-1906 (La. 11/21/07), 967 So.2d 1157; Sizeler Hammond Square Limited Partnership v. Gulf States Theatres, Inc., 02-759, pp. 7-10 (La. App. 5th Cir. 12/11/02), 836 So.2d 256, 260-61, writ denied, 03-0070 (La. 3/21/03), 840 So.2d 552; Heirs of Boudreaux v. Payne, 00-00719, pp. 4-5 (La. App. 3d Cir. 12/6/00), 773 So.2d 894, 897, writ denied, 00-3528 (La. 2/16/01), 786 So.2d 102; Hidalgo Motors, Inc., 576 So.2d at 1087-88. Therefore, while ongoing litigation may present a basis on which to suspend and extend an existing lease,[6] as the matter before us does not involve the extension of an existing lease, but an attempt to renew a lease, we hold that Pitre Industries’ failure to timely give notice of its desire to exercise the option to renew extinguished the option, and the lease expired on its own terms on September 30, 2015.
jjsRental Payments
Generally, acceptance of rent after notice of default constitutes condonation of the alleged default giving rise to reinstatement of the lease. However, whether the lessor in a particular ease forgave a breach of the lease is a factual determination. Good v. Saia, 07-0145, p. 29 (La. App. 4th Cir. 9/12/07), 967 So.2d 1161, 1177. And while acceptance of rent after issuance of the required notice to vacate, but before judgment, in a summary eviction action usually vitiates the notice of eviction and prevents a lessor from obtaining a judgment of eviction,[7] such is not necessarily the result where acceptance of rental payments occurs subsequent to providing late notice of exercising an option to renew.
In Huval v. 4 S Construction & Maintenance, Inc., 442 So.2d 1353 (La. App. 3d Cir. 1983), the lessee failed to give the lessor timely written notice of its intent to exercise its option to renew the subject lease within 60 days of expiration of the primary term of the lease, but instead, after the lease had expired according to the term recounted therein,[8] the lessee sent the lessor payment of the increased rent recited in the option in the event the lease was renewed for another five years. Huval, 442 So.2d at 1355. The check for the increased rental payment was mistakenly negotiated by the lessor’s wife, and as a result, the lessor allowed the lessee to occupy the leased premises for one additional year, but notified the lessee that he did not consider the lease renewed because the lessee failed to provide the lessor with timely •written notice of its intention to renew the lease. Huval, 442 So.2d at 1356. The appellate court found that the lessor had not waived his right to | ^receive timely written notice of the lessee’s intent to renew the lease and affirmed the trial court’s judgment ordering the lessee to vacate the leased property pursuant to the *1098 lessor’s rule to evict. Huval, 442 So.2d at 1356-57.
In this case, Pitre Industries submitted a lease payment to CLT for the first year of the renewal period, which CLT received, but did not cash. Instead, CLT delivered the check to its legal counsel to keep and subsequently filed this action for eviction. Considering these facts, CLT’s act of receiving, but not cashing, the lease payment for the renewal period did not .constitute a waiver of CLT’s right, to receive timely written notice of Pitre,. Industries’ intent to renew the lease nor was a renewal of the subject lease confected on that basis. See also Hidalgo Motors, Inc., 576 So.2d at 1087-88.
CONCLUSION
Therefore, for the foregoing reasons,, we find that as matter of law, the trial court erred in denying CLT’s rule for eviction. As Pitre Industries failed to provide CLT timely written notice of its intent to renew the subject lease, the lease expired in accordance with its own terms on September 30, 2015. Accordingly, we reverse the judgment of the trial court and herein grant CLT’s petition for eviction. We remand this matter to the trial court to set a time by which Pitre Industries, LLC must vacate the leased property and deliver possession of the same to Constantin Land Trust. Pitre Industries’ answer to the appeal is denied as meritless. All costs of this appeal are cast to the appellee, Pitre Industries, LLC.
REVERSED, RENDERED, AND REMANDED; ANSWER TO APPEAL DENIED; MOTION TO SUPPLEMENT DENIED.
McClendon, J., concurs.

. The record indicates that CLT had filed injunction proceedings against Pitre Industries as well.

. In the answer filed by Pitre Industries, it only raised the alleged ambiguity in the lease agreement, but in its appellee brief, Pitre Industries further raised the acceptance of rental payments as an additional basis for affirming the trial court's judgment. See La. C.C.P. art. 2133(B).

. In light of this determination, we deny the motion filed by Pitre Industries to supplement the record before us with evidence of those other suits.

. The record establishes that the lease agreement was drafted by counsel for CLT. See La. C.C. art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text”).

. The initial letter notifying CLT of its election to exercise the option to renew the lease was sent by certified mail, postmarked September 4, 2015, to James Constantin, Jr. in Norman, Oklahoma and to counsel for CLT in Metairie, Louisiana. A second notice dated September 18, 2015, was sent by certified mail to CLT to the New Braunfels, Texas address recited in the lease agreement.

. See McCrary v. Park South Properties, 560 So.2d 38, 44 (La. App. 2d Cir.), writ denied. 563 So.2d 1156 (La. 1990), wherein the trial court found the lessee was entitled to have the initial term of the original ground lease suspended and extended by a period of time equal to and commensurate with the period of time from when the lessor first disturbed the lessee’s peaceful possession of the property to when the matter was finally adjudicated. Of note, the extension was granted by the trial court during the existing term of the lease and not after the term of the lease had already expired. That decree by the trial court was not reviewed on appeal.

. See Billiot v. Hue, 10-1825, p. 4 (La. App. 1st Cir. 5/6/11), 2011 WL 1944120, at *2 (unpublished opinion).

. According to the facts recited in the opinion, the parties signed the subject lease on January 1, 1976, with a primary term of five years. The lessee in that case sent the increased rental payment for the renewal period on January 26, 1982, and then sent written notice of its intent to exercise the option to renew on February 16, 1982. Huval, 442 So.2d at 1354-56.