889 So.2d 475 (2004)
Akime PLATER, Plaintiff-Appellee,
v.
IRONWOOD LAND COMPANY, L.L.C., Defendant-Appellant.
No. 39,085-CA.
Court of Appeal of Louisiana, Second Circuit.
December 8, 2004.
*476 Shuey, Smith, Reynolds, Rios & Hiller, L.L.C., by Richard E. Hiller, Shreveport, for Appellant.
Legal Services of North Louisiana, Inc., by Lee B. Aronson, Shreveport, for Appellee.
Before BROWN, CARAWAY and DREW, JJ.
DREW, J.:
The lessor of a rent house, Ironwood Land Company, L.L.C., appealed, complaining that the trial court erred in finding that Ironwood disturbed the peaceable possession of Akime Plater, the lessee. Ironwood also objected to the award to Plater of the full amount of the rental payments over the course of Plater's lease along with the return of her security deposit. The judgment is reversed in part and affirmed in part.

FACTUAL AND PROCEDURAL BACKGROUND
In her petition filed July 18, 2002, Akime Plater alleged that:
 On September 1, 2001, she leased a house in Shreveport for $400 per month (lease actually signed September 20, 2001).
 Ironwood acquired the property at tax sale and did not inform Plater that the property was still subject to redemption.
 On February 1, 2002, Plater received a letter from The Vitalizer Network informing her that foreclosure on the property was complete and requiring her to vacate immediately.

*477  Plater informed Ironwood about her receipt of the letter. Ironwood's representative instructed her to ignore the letter and pay her rent on time. Plater continued to live at the property.
 On March 5, 2002, a sheriff's deputy came with a writ of seizure to remove plaintiff, her family, and their possessions from the residence.
 A deputy, unaided by Ironwood, made arrangements for the family to stay in the house several more days.
 Ironwood caused Plater mental anguish, damages and humiliation, violated her warranty of peaceful possession, and breached its lease contract with her.
Ironwood filed its answer on August 9, 2002, denying Plater's allegations. On October 9, 2002, Plater filed a motion for summary judgment based upon Louisiana Unfair Practices and Consumer Protection Law (LUPCPL), La. R.S. 51:1401, et seq. The summary judgment was denied on November 21, 2002.
Filings in the record set out the very complex history of the property's ownership, beginning in 2000. After the January 28, 2004, trial, the trial court awarded Plater the return of five months' rent and her security deposit, but denied her request for treble damages and attorney's fees.
Plater answered Ironwood's appeal and contended that the trial court erred (1) in denying treble damages and attorney's fees under LUPCPL, and (2) denying inconvenience and non-pecuniary damages.

TESTIMONY
Akime Plater testified:
 She saw the house with a "for rent" sign and called the rental number; she signed a lease that day or the next and paid a $400 deposit.
 When she attempted to move into the house, someone was still living there.
 She reported this to Randy Harville of Ironwood, who gave her a letter stating her right to occupy the premises; Harville instructed her to call the police, who informed her that her landlord needed to resolve the problem.
 Harville authorized Plater and her relatives to place the occupant's property on the curb and they did so. Plater and her children moved into the house.
 Among the repairs needed were new locks, replacement of kitchen floors, carpet or repairs for wooden floors throughout the house, mended patio door, and repainting every room; Harville instructed her to proceed and to bring receipts for her to be reimbursed for materials for which she would receive deductions from her rent.
 Hampered by difficulties and lack of know-how, Plater and her sons replaced the kitchen floor, laid carpeting, and painted until they received the notice to vacate. Her brother-in-law replaced decking in the kitchen for a washer and dryer.
 About February 1, Plater received the notice-to-vacate letter taped to her door. She sent the letter to Harville via his maintenance man. A couple of days later, Plater retrieved the letter from Harville, who informed her not to worry about the letter. She paid her February rent but could not recall to whom.
 Her brother-in-law, Patrick P. Plater, was present when Harville told her not to worry.
 On March 4 as she was leaving for work, a deputy sheriff handed her the Writ of Possession and informed her *478 she had until the next day to get out. She then went to the courthouse, where a deputy clerk arranged for her to have five days to vacate the property.
 Immediately on leaving the courthouse, she called Randy Harville on her cell phone. Harville told her there was no problem, she did not have to move, and she should continue paying her rent.
 When the Plater family moved to a smaller apartment, she had to leave many of her belongings because she had no room for them and did not have time to sell them all.
 The forced move caused a great deal of upset to herself and her children, since they had put so much effort into improving the house.
 The lease term was month to month. She verbally agreed with Harville that she got credit off her rent when she brought in receipts for materials to improve the property.
 Each time she paid rent, she received a written receipt reflecting credit for funds she expended for repairs. She lost rent receipts and other paperwork in the move.
Both Plater's teenage sons testified that the family worked on the house the entire time they lived there, painting, taking up flooring, and laying carpet and tile. When they moved to the apartment, Plater tried to keep a "straight face" so the children would not worry. One son noticed no change and could not tell Plater was worried, while the other son reported Plater stayed in her room and seemed sad.
Plaintiff's brother-in-law, Patrick P. Plater, testified:
 He observed plaintiff and her sons work on the apartment for two weeks, off and on.
 He went with plaintiff to see the lessor's representative when the letter was left on plaintiff's door in February. The representative instructed plaintiff not to worry about it.
 Upset, plaintiff called him when the sheriff's deputy came to the house to evict the family in March. He advised her to investigate the legitimacy of the document.
 He assisted her in moving and observed her to be sad. Plaintiff began smoking and drinking. He described the plaintiff as a cheerful, fun person before the eviction.
Randy Harville testified:
 He was a partner in Ironwood Land Company and Hunter Land Company, which bought investment property; an LLC, Hunter bought rental properties; Ironwood was the smaller of the two companies.
 At a sheriff's sale, Ironwood bought the property later leased by Plater.
 He filled out the lease document in which Plater leased the property for $400 per month on a month-to-month basis.
 The four rent receipts dated September 20, 2001 ($400); November 2, 2001 ($295); December 28, 2001 ($400); and January 30 ($260) were rent payments by Plater. Plater's receipt marked "Petty Cash" was not a rent receipt from his company. Plater brought in receipts for items purchased to repair and paint the property. According to their agreement, Harville deducted those amounts from the rent.
 When Plater brought him the letter in February 2002, Harville informed her she may or may not have to move and to be prepared either way because the previous owner still had the right to buy the property back. The property *479 had not been redeemed in February and March 2002.
 The initial $400 receipt was dated September 20, but Harville allowed her ten days without paying rent in exchange for her moving the previous occupant's belongings out. That first $400 payment, therefore, covered the October rent.
 The remaining receipts covered November and December and January rents. The amounts reflected deductions for items purchased by Plater. Harville recalled no rent payments for February and March.
 The only paperwork Harville had on the transaction was that supplied by Plater through her attorney because a former partner had taken two file cabinets filled with the companies' business records.

REASONS FOR JUDGMENT
At the conclusion of the hearing, the trial judge observed that he did not like what happened to Plater, which "sounded terrible" and was a bad situation. The court also recognized Ironwood's right to buy property at tax sales and then utilize it. "And I also want to point out that I think that the case involves good people on both sides. I don't see anybody who is not a nice person in this courtroom." In written reasons issued later, the trial court found that:
 Plater proved that Ironwood violated its contractual obligations to her and was liable to the plaintiff.
 Prior to Plater's September 20, 2001, lease with Ironwood, the property had a "lengthy and cumbersome legal history."
 There is a significant legal question as to whether on September 20, 2001, Ironwood or Hunter Land, L.L.C. (another company with some of the same principals as Ironwood) had clear title to the property.
 Executory proceedings against the property commenced on April 6, 2001, and were pending at the time the lease was executed between Ironwood and Plater.
 "Suspicious, at best" were the extensive tax and legal proceedings pending at the time of the lease and the "peculiar circumstances" of Plater moving the belongings of the previous occupant onto the street.
 When Ironwood accepted Plater's security deposit, initial rent, and signed lease, Ironwood was legally obligated to Plater to guarantee the property against vices and defects and peaceful possession.
 Plater made rent payments, and she and her children painted, installed tile, and repaired doors to make it habitable.
 To the extent she could, Plater performed her obligations of the lease.
 During the lease on November 7, 2001, the property was sold at Sheriff's sale (# 457,579).
 Plater received the notice to vacate from Vitalizer in February 2002 but Ironwood downplayed its importance to her.
 On March 11, 2002, Plater received a Writ of Possession.
 Ironwood knew or should have known of the property's extensive legal history and never informed Plater.
 While some of principals of Ironwood and Hunter are the same, it is disputed whether Ironwood had clear title to the property when Ironwood leased the house to Plater on September 20, 2001.
 Assuming Ironwood had clear title, Ironwood had violated its obligation to *480 provide Plater with peaceful possession. The alleged disclaimer in the contract was ineffective and of no legal effect under the facts of this case.
 Because an Ironwood principal misappropriated two file cabinets, neither Ironwood nor its representative, Randy Harville, could testify what rent Plater paid.
 Plater had some receipts and testified she lost others in the move.
 In view of the parties' relative positions, Plater satisfied her obligation to Ironwood of $400 per month through cash or labor. Ironwood violated its statutory obligations to Plater.
Based upon the foregoing, the trial court found that Plater was entitled to return of full rental amount, $2,000 plus the $200 security deposit. Plater's request for non-pecuniary damages was denied. Plater was not entitled to treble damages and attorney's fees under the Louisiana Unfair Practices and Consumer Protection Law, as it is not applicable to this case.

DISCUSSION
The ownership of the property is not an issue. One possessing property of another may lease it to a third party. La. C.C. art. 2681. In such a case, the lessor warrants to the lessee the enjoyment of the property against a claim of the owner. La. C.C. art. 2682. The parties agreed and the lease stated that the term of this lease was month to month. Signed on September 20, 2001, by Randy Harville for Ironwood and by Plater, the lease required that the lessee pay $400 monthly rent by the first of each month and a $200 damage deposit.
Harville testified that Ironwood waived Plater's rent from September 20 through September 30, since Plater had to remove the previous occupant's belongings. Documentation was presented for four months' rent (October 2001 through January 2002). Harville disputed the fifth receipt presented by Plater, who explained she lost paperwork in her move. Ironwood had no documentation of Plater's rental payments. Harville attributed that to the removal of company records by a former associate. The trial court accepted Plater's testimony that she paid rent for February 2002.
La. C.C. art. 2692 requires that a lessor cause the lessee to be in peaceable possession during the continuance of the lease. On appeal, Ironwood argued that the trial court erred in deciding that Plater's peaceful possession had been disturbed. In Ironwood's view, from September 2001 through February 2002, Plater had peaceable possession under the month-to-month lease.
La. C.C. art. 2686 requires that a lessor give ten days' notice to terminate a month-to-month lease. Ironwood reasoned that "for all intents and purposes," Plater received the required notice in March 2002, when Plater received the eviction notice and moved sometime later. Under the terms of the lease, however, Plater waived the notice requirements of La. C.C. art. 2686, among other things. The Ironwood lease also gave Ironwood the right to "immediately terminate the lease" if Plater failed to pay any rent when due.
A petition for executory process and an order of seizure and sale of leased property do not constitute a disturbance of peaceable possession absent a denial of access or an order to vacate. See Union Bank v. Cottonport Insurance Exchange, 93-47 (La.App. 3d Cir.1/12/94), 630 So.2d 975, writ denied, 94-0721 (La.5/6/94), 637 So.2d 1049. Via executory process, a creditor of the lessor obtained an order of seizure and sale. When the creditor's representatives and the deputy sheriff arrived at the building, they learned Cottonport, *481 the lessee, had a recorded lease on the building and departed without further action. Believing the property could be seized at any time, Cottonport stopped paying rent and vacated the premises. The creditor successfully sued Cottonport to collect back rent and accelerated the remaining rent payments under the terms of the lease. Cottonport was never prevented from using the premises and vacated by its own choice.
The present dispute is distinguishable factually because in March 2002, Plater received a notice to vacate (the eviction notice) with which she complied after several days' delay. Plater had not paid the rent for March. Under the terms of the lease, Plater had waived her notice from Ironwood which could have instituted eviction proceedings immediately when the rent was not paid timely.
Under the reasoning of Union Bank, supra, the existence of the earlier tax sale redemption proceedings alone was insufficient to constitute a disturbance of her possession. Since the term of the lease was month to month, Plater had no reasonable expectation of long-term occupancy of the premises. Plater received the February 1, 2002, letter from Vitalizer informing her that she had to move and requesting she contact Vitalizer to "clarify when she would be vacating the property." Vitalizer's letter gave Plater the name and phone number of Julie Watts to contact to "avoid a court ordered eviction, which will give you considerably less lenience in your vacating process." Instead, Plater's only action was to contact Randy Harville at Ironwood, who informed her she could stay. Without further information, Plater continued to live there and paid rent for February 2002. Apparently, she did not contact Vitalizer, which had forewarned her about possible eviction proceedings and offered to work with her on establishing when she would leave the house.
This court held in Shreveport Plaza Associates Limited Partnership v. L.R. Resources II, 557 So.2d 1067 (La.App. 2d Cir.1990), that if a disturbance is such that the lessee can no longer use the premises for the intended purpose, the lessor has breached its obligation to maintain the lessee in peaceable possession. The Vitalizer letter informed Plater she would have to leave and requested she contact the company to work out arrangements for her departure. She chose not to do so and lived there throughout the month of February. Plater has not shown that her possession was disturbed by Ironwood during the five months for which she paid the rent.
A wrongfully evicted tenant is entitled to damages. La. C.C. art. 2696. Plater was not wrongfully evicted from the property on which she had only a month-to-month lease. She lived in the residence for the entire time for which she paid rent. She was certainly upset and inconvenienced when she learned she had to leave the home on which she and her sons had labored. The month-to-month lease term, however, made her occupancy indeterminate by its terms. Due to the uncertain nature of the lease, we find that the trial court erred in concluding that Plater proved she was entitled to damages for having to vacate the rent house. Plater did not sustain her burden of proving she sustained damages.
In her answer to Ironwood's appeal, Plater contended that the trial court erred in denying treble damages and attorney's fees under La. R.S. 51:1401, et seq, the La. Unfair Practices and Consumer Protection Law (LUPCPL). The trial court correctly found that LUPCPL was not applicable. In an anti-trust case, *482 Jefferson v. Chevron U.S.A., Inc., 98-0254, 97-2436 (La.App. 4th Cir.5/20/98), 713 So.2d 785, 792, writ denied, 98-1681 (La.10/16/98), 727 So.2d 441, the court discussed the application of the LUPCPL:
La. R.S. 51:1405(A) provides in part:
Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.
Further, La. R.S. 51:1409 confers a right of private action on "[a]ny person who suffers any ascertainable loss of money or movable property, corporeal or incorporeal" from unlawful trade practices. This language has been held to confer the private right of action on both consumers and business competitors.... LUTPA provides a cause of action both for trade practices which are "unfair" and those which are "deceptive." An act is not required to be both unfair and deceptive. What constitutes unfair and/or deceptive practices is not specifically defined, but is determined on a case by case basis.
The statutory definition of an "unfair" practice is broad and subjectively stated and does not specify particular violations. A practice is unfair when it offends established public policy and when the practice is unethical, oppressive, unscrupulous, or substantially injurious. What constitutes an unfair trade practice is to be determined on a case-by-case basis.
A trade practice is "deceptive" for purposes of LUTPA when it amounts to fraud, deceit or misrepresentation. (Citations omitted.)
Plater supplied no evidence that Ironwood and its representatives were guilty of unfair trade practices. While the lessor's business practices were disorganized and slipshod, Plater apparently had unrealistic expectations of occupying the rent house on a long-term basis. She lived in the house for the time for which she paid rent. While she received in February the Vitalizer letter informing her she would have to leave, she did not contact Vitalizer to work out a departure convenient to her as she was invited to do. Instead, she continued living in the house for the remainder of that month.
We find that the trial court erred in awarding Plater the return of her rent payments. The trial court cited the uncertain ownership and the connected ongoing judicial proceedings about which Plater was not informed. Neither the ownership situation nor the judicial proceedings disturbed her possession. A non-owner can lease property to another. A petition for executory process and an order of seizure and sale of leased property do not constitute a disturbance of peaceable possession absent a denial of access or an order to vacate. A disturbance means the lessee can no longer use the premises for the intended purpose.
While Vitalizer's February letter notified her of her need to move, the company gave her an opportunity which she ignored to arrange the move at her convenience. Basically, Plater got what she paid for under the month-to-month lease.[1] She occupied the premises for all the time for which she paid. This result is limited to these peculiar facts.

DECREE
The portion of the judgment ordering defendant to pay $2,000.00 (rent for the term of the lease, October 20, 2001  February, 2002) is reversed. In all other respects, the judgment is affirmed.
*483 Costs of the appeal are to be divided between the parties.
AFFIRMED IN PART; REVERSED IN PART.
NOTES
[1] Had these identical events occurred during the course of a unexpired lease for a term, it is possible a different result would have occurred.