907 So.2d 896 (2005)
Ralph McCURDY, et ux., Plaintiff-Appellant
v.
BLOOM'S INCORPORATED, Defendant-Appellee.
No. 39,854-CA.
Court of Appeal of Louisiana, Second Circuit.
June 29, 2005.
*897 Hallack Law Firm, by William H. Hallack, Jr., Dennis W. Hallack, Monroe, for Appellant.
James E. Paxton, Tallulah, for Appellee.
Watson, McMillin & Harrison, by W. Michael Street, Monroe, for Intervenor W. Brooks Watson.
King, Leblanc & Bland, by J. Geoffrey Ormsby, New Orleans, for Intervenors Leslie Bingham and Jane Saiewitz Thompson.
Before GASKINS, CARAWAY and LOLLEY, JJ.
LOLLEY, J.
Ralph and Judy McCurdy appeal the judgment of the Sixth Judicial District Court, Parish of Tensas, State of Louisiana, in favor of Bloom's Incorporated ("Bloom's"). For the following reasons, we affirm.

FACTS
On August 30, 2001, Ralph McCurdy, who is married to Judy McCurdy, ("McCurdy") and Bloom's, represented by Dr. Gerald M. Rankin, its president, entered into a Lease for Hunting Privileges ("Lease") in connection with 443 acres of land located in Tensas Parish, Louisiana (the "property").[1] The Lease was recorded in the Tensas Parish public records. With an initial term of ten years beginning on June 1, 2002, the Lease also contained a five-year option to renew if McCurdy otherwise met the terms of the initial Lease. Additionally, the Lease stated that "[Bloom's] grants to [McCurdy] a Right of First Refusal to purchase the property above described" (the "right of first refusal"). McCurdy paid Bloom's consideration of $4,821.08 for the granting of the right of first refusal.[2]
*898 On June 8, 2004, McCurdy received a letter from Bloom's attorney advising him that Bloom's had received an offer for the property at $1,000.00 per acre. The letter further advised McCurdy that he had ten days to exercise his right of first refusal (the Lease gave no terms for exercising the right). McCurdy responded to Bloom's letter, requesting additional time (30 days) and additional information to make a decision. Bloom's responded by letter dated June 25th that it would give McCurdy the thirty days, from the date of its first letter of June 8th.
In response, McCurdy filed a Petition for TRO and Preliminary Injunction on July 6, 2004, and the next day, the trial court entered a temporary restraining order enjoining, restraining and prohibiting Bloom's from selling or agreeing to sell the property subject to the right of first refusal. Afterwards, Bloom's delivered to McCurdy a copy of the purchase agreement previously referenced in the June 8 letter. The agreement actually contained two separate executory proposals affecting the 443-acre tract. First, the agreement disclosed that Bloom's only owned an undivided one-half interest in the property, with Leslie Bingham and Jane Thompson each owning an undivided 1/4 interest. From that co-ownership, the agreement proposed a partition of the tract in kind with Bloom's acquiring one-half of the acreage as shown by a survey of the partition and Bingham and Thompson acquiring the remaining part. Second, the agreement proposed a sale of all of the partitioned lands to W. Brooks Watson. The combined agreement was signed by all four parties.
Shortly after obtaining these documents from Bloom's, McCurdy filed a second petition at the trial court, his Petition for Preliminary Injunction, wherein he claimed to have no knowledge that the property was not solely owned by Bloom's and that the true ownership information was not contained in the Lease. Furthermore, he claimed that Bloom's planned to breach the Lease and that the trial court should issue a preliminary injunction to maintain McCurdy in peaceable possession of the property. He also sought a preliminary injunction preventing Bloom's from partitioning the property amongst the co-owners for the duration of the Lease.
At the hearing on the matter, the parties agreed to dismiss McCurdy's earlier filed petition for TRO and preliminary injunction. After considering the issues remaining, the trial court ruled in favor of Bloom's and against McCurdy, denying his petition for preliminary injunction against the stated actions. This appeal ensued.[3]

DISCUSSION
As stated, McCurdy originally had two separate petitions before the trial court, each seeking a preliminary injunction in regards to alleged actions by Bloom's. As agreed to by the parties, McCurdy's initial petition was dismissed for being moot. Therefore, the trial court only considered the subsequent petition for preliminary injunction, in which McCurdy sought a preliminary injunction requiring Bloom's to: (1) maintain McCurdy's peaceable possession of the property, and (2) enjoin the proposed voluntary partition of the property. The trial court denied the preliminary injunction for each request, based on several findings of fact and law recited in the reasons for judgment.

*899 The Lease

Underlying the trial court's ruling denying the request for preliminary injunction were various conclusions of law concerning the Lease, which McCurdy argues were in error and which we will address first. Specifically, McCurdy argues that the trial court erred in determining that he only had an undivided one-half interest in the property as a result of the public records doctrine. He also argues that the trial court was in error in concluding that he only had a one-half interest in the property, because he failed to have the consent of Bingham and Thompson as lessors. We conclude that neither assignment of error has merit for the following reasons. Louisiana R.S. 9:2721(A) states:
No sale, contract, counter letter, lien, mortgage, judgment, surface lease, oil, gas or mineral lease, or other instrument of writing relating to or affecting immovable property shall be binding on or affect third persons or third parties unless and until filed for registry in the office of the parish recorder of the parish where the land or immovable is situated. Neither secret claims or equities nor other matters outside the public records shall be binding on or affect such third parties.
As a result of this statute, commonly known as the public records doctrine, individuals are deemed to have constructive knowledge of the existence and contents of recorded instruments affecting immovable property. As this court stated in Hasslocher v. Recknagel, 160 So.2d 421, 423 (La.App. 2d Cir.1964), writ refused, 245 La. 964, 162 So.2d 14 (1964):
It is also the law that all persons have constructive notice of the existence and contents of a recorded instrument affecting immovable property; and where such an instrument contains language that fairly puts a purchaser on inquiry as to the title and he does not avail himself of the means and facilities at hand to obtain knowledge of the true facts he is to be considered as having bought at his own risk and peril. (Emphasis added).
At the trial of the matter, McCurdy admitted that prior to his execution of the Lease, he had not checked the Tensas Parish public records for any recorded acts affecting the property. However, he further testified that after the actual ownership of the property came to his attention, he hired an abstractor to check the records, and it was evident that Bingham and Thompson each actually owned a one-fourth interest in the property.[4] Thus, there is apparently no question that the public records were sufficient to put a third party on notice as to the actual and legal ownership of the property. Obviously, had McCurdy checked the public records prior to executing the Lease, he would have known that Bloom's did not have complete ownership of the property, and, presumably, McCurdy would have taken further steps to assure his interest in the entire property. Thus, we conclude the trial court was correct. McCurdy entered into the Lease at his own "risk and peril," and pursuant to the public records doctrine, he acquired a lease interest in only that portion of property for which Bloom's had a right to lease as reflected in the Tensas Parish public records, i.e., Bloom's one-half interest.
*900 The trial court also correctly rejected McCurdy's argument that his lease interest attached to all of the property under the theory of negotiorum gestio. It is possible, McCurdy argues, that Bloom's had the right to act without the consent of his co-owners, but on their behalf, under the theory of negotiorum gestio, which would have given McCurdy lease rights to the entire property. We disagree.
Louisiana C.C. art. 2292 states that "[t]here is a management of affairs when a person, the manager, acts without authority to protect the interests of another, the owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances." This is known as the doctrine of negotiorum gestio and is considered a quasi-contract. Kirkpatrick v. Young, 456 So.2d 622 (La.1984). As stated in the 1995 Revision Comments to art. 2292, "[t]his Article does not apply when the person who undertakes management acts in his own interest or contrary to the actual or presumed intention of the owner. In such a case, there is a usurpation, and the person who manages an affair under these circumstances may incur liability under the law of delictual obligations."
Bloom's relationship was not that of a manager in relation to the interests of the true owners, Bingham and Thompson, as contemplated under these quasi contractual provisions of the Civil Code. These parties are all co-owners, and therefore the specific Civil Code regime governing their relationship is found in the articles dealing with co-ownership, La. C.C. art. 797, et seq. Notably, C.C. art. 805 provides:
A co-owner may freely lease, alienate, or encumber his share of the thing held in indivision. The consent of all the co-owners is required for the lease, alienation, or encumbrance of the entire thing held in indivision.
There is no ambiguity regarding this dictate. From this controlling principle, it is clear that one's status as a co-owner does not give him a mandate or agency to lease the co-owner's share of the property. The consent of all the co-owners is required. There is no evidence that Bingham and Thompson had knowledge that Bloom's was leasing the property to McCurdy or that they received any portion of the rent. Additionally, there is no evidence of an express and written authority or mandate by which Bloom's acted on behalf of Bingham and Thompson. Accordingly, their co-ownership share of the immovable was not bound by the lease. La. C.C. art. 2996.

Preliminary Injunction
Stemming from these initial findings of law by the trial court, it ultimately denied McCurdy's requests for preliminary injunction to maintain his peaceable possession of the property and to restrain the voluntary partition. A preliminary injunction is a procedural device interlocutory in nature designed to preserve a status pending final determination of an action. Wied v. TRCM, LLC, 30,106 (La.App. 2d Cir.07/24/97), 698 So.2d 685, citing, Schwegmann Bros. Giant Super Markets v. Louisiana Milk Comm'n., 290 So.2d 312 (La.1974). To obtain a preliminary injunction, the moving party must show he or she is entitled to the relief sought, without which irreparable injury, loss or damage will result. La. C.C.P. art. 3601; Wied, supra; Louisiana Gaming Corp. v. Rob's Mini-Mart, 27,920 (La.App. 2d Cir.01/24/96), 666 So.2d 1268. A preliminary injunction may issue upon a prima facie showing that the plaintiff would prevail on the merits. Id. The trial court has great discretion in deciding whether to grant or deny a preliminary injunction, and its ruling will not be disturbed absent manifest error. Id. With this in mind, and *901 for the following reasons, the trial court did not commit manifest error in denying McCurdy's request for preliminary injunction.

Preliminary injunction to maintain peaceable possession
In McCurdy's petition for preliminary injunction that is at issue in this appeal, McCurdy alleged that the actions by the co-owners to voluntarily partition the property infringe on his right of peaceable possession of the property under the Lease. Thus, McCurdy sought to maintain his peaceable possession of the property by a preliminary injunction of the trial court. The trial court determined that this request was premature, which finding McCurdy argues was in error. We disagree.
One of the principal obligations a lessor has to his lessee is "[t]o protect the lessee's peaceable possession for the duration of the lease." La. C.C. art. 2682; Walters v. Greer, 31,480 (La.App. 2d Cir.01/22/99), 726 So.2d 1094. Specifically, "[t]he lessor warrants the lessee's peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right to possession of, or any other right in the thing." La. C.C. art. 2700.
If a disturbance is such that the lessee can no longer use the premises for the intended use, the lessor has breached its obligation to maintain the lessee in peaceable possession. Plater v. Ironwood Land Co., L.L.C., 39,085 (La.App. 2d Cir.12/08/04), 889 So.2d 475. Additionally, according to the Revision Comments of La. C.C. art. 2700, "... the term `disturbance' of possession is intended to have the same meaning as in Article 3659 of the Code of Civil Procedure...." That article states, in pertinent part:
A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.
See also La. C.C. arts. 2674 and 2711.
Here, the trial court correctly determined as premature McCurdy's request for a preliminary injunction against Bloom's to maintain his peaceable possession, because it is evident that McCurdy's right of possession has not been disturbed in fact. Primarily, he has not been evicted physically from the property. Nor has Bloom's (or Bingham, or Thompson) carried out any other type of physical act that has prevented McCurdy from enjoying the property according to its intended use under the Lease. For example, a fence has not been erected along the lines drawn on the survey prepared for the contemplated partitionsuch action may have constituted a disturbance in fact; however, that has not occurred.
Nor would the contemplated partition and sale of the property be deemed a disturbance sufficient to be considered a violation of Bloom's obligation to maintain McCurdy in peaceable possession. That is, the mere threat that the property might be partitioned by the co-owners and perhaps sold to a third party, does not in and of itself equate to a disturbance in McCurdy's peaceable possession. Consider Plater, supra, where this court concluded that the existence of a tax sale redemption proceeding of the leased premises was insufficient to constitute a disturbance of the lessee's possession. Id. at 481. The Plater court noted that "[n]either the ownership situation nor the judicial proceedings disturbed [the lessee's] possession." Id. at 482. Also consider Union Bank v. Cottonport Ins. Exchange, 93-47 (La.App. 3d Cir.01/12/94), 630 So.2d 975, writ denied, 94-0721 (La.05/06/94), 637 So.2d 1049, *902 where it was determined that a petition for executory process and an order of seizure and sale of leased property do not constitute a disturbance of peaceable possession absent a denial of access or an order to vacate. Id. at 977.
In this case, there is no allegation or evidence by McCurdy to indicate that he does not continue to enjoy full use and enjoyment of the property in accordance with the terms of the Lease. Thus, the trial court correctly concluded as premature any request for preliminary injunction by McCurdy to maintain his peaceable possession of the property, despite the proposed partition between the co-owners.

Preliminary injunction to enjoin partition of the property
McCurdy also argues that the trial court erred in denying his request for preliminary injunction to enjoin the partition of the property by the co-owners. In its petition, McCurdy sought a preliminary injunction to restrain Bloom's from partitioning its undivided one-half interest in the property for the duration of the Lease. The trial court denied the request, which McCurdy argues was in error. For the following reasons, we find no error with the trial court's conclusion.
A thing may be owned by two or more persons in indivision. La. C.C. art. 797. The state of indivision ordinarily terminates by amicable or judicial partition. Welch v. Zucco, 27,634 (La.App. 2d Cir.12/06/95), 665 So.2d 697, writ denied, 96-0438 (La.04/08/96), 671 So.2d 336, citing, 2 A. Yiannopoulos, Louisiana Civil Law Treatise, "Property" § 30 (3rd Ed.1991).
Here, Bloom's, Bingham, and Thompson, the co-owners of the property, have agreed to an amicable or voluntary partition in kind of the property as shown on the survey made of the property. The ability of the parties to partition the property is an absolute right, long recognized by Louisiana law. Reynolds v. Reynolds, 43 La. Ann. 1118, 10 So. 303 (La.1891). Co-owners cannot be compelled to remain such. As provided in La. C.C. art. 807, "[n]o one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or juridical act." When you consider that under normal circumstances not even a co-owner can impede a partition of property owned in indivision, obviously, it follows that a party with rights granted by less than all the co-owners, such as McCurdy, cannot prevent the partition.[5] Thus, Bloom's clearly cannot be restrained from voluntarily partitioning in kind the property between it, Bingham, and Thompson, regardless of the existence of the recorded Lease. See Aucoin v. Greenwood, 199 La. 764, 7 So.2d 50 (1942).
A separate question is what effect the partition of the property, once allowed to occur, would have on the Lease. On appeal, McCurdy makes the argument that the recorded Lease would burden all of the property. However, that issue is not ripe for consideration. The question of what effect the Lease would have on the proposed partition (i.e., none) is completely separate from the question of what effect the proposed partition would have on the Lease. The trial court properly determined in its reasons for judgment that the proceedings before it were not appropriate for making such a determination. The trial court further remarked in its oral reasons that such a determination would be appropriate "... for a suit for declaratory judgment." Whereas McCurdy argues that this remark was in error, we note that the appeal courts review judgments *903 not reasons for judgmentsand the results those judgments have. Hickman v. Bates, 39,178 (La.App. 2d Cir.12/15/04), 889 So.2d 1249. Here, the trial court's statement was not made part of the final judgment or even had any bearing on the disposition of the final judgment wherein the requests for preliminary injunction were denied. We conclude that this assignment by McCurdy is without merit.
And, whereas none of McCurdy's assignments of error make any claims regarding the status of his right of first refusal, we consider it pertinent as it pertains to his request for preliminary injunction to restrain Bloom's from partitioning the property. As stated pertaining to the Lease, the co-owners have an absolute right to voluntarily partition the property in kind, and McCurdy's right of first refusal cannot be a basis for preventing the parties to exercise that right.[6] However, as with the Lease, there is also a question of what effect the right of first refusal might ultimately have on the property once it is partitioned. Having only to decide the issue of the preliminary injunction, the trial court did not reach this issue, which is clearly beyond the scope of this appeal.
We note in the record that subsequent to the hearing and the entry of the final judgment by the trial court, Bloom's filed a Petition for Declaratory Judgment, wherein it requested the trial court to make a determination regarding the applicability of the Lease and the right of first refusal as a result of the partition. In McCurdy's appeal brief, he addresses those issues; however, as stated, those precise issues have not been considered at all by the trial court. Thus, it certainly would be premature for this court to reach a conclusion regarding same.
Finally, McCurdy's means to protect his lease and right of first refusal interests by preliminary injunction have failed. However, McCurdy may protect temporarily those rights until the final determination of the pending litigation by filing a notice of lis pendens in the Tensas Parish mortgage records.[7] This litigation, which involves a recorded lease, properly would be the subject of a notice of lis pendens. See Ducote, supra.

Intervention by Bingham, Thompson, and Watson
In his final assignment of error, McCurdy argues that Bingham and Thompson are indispensable parties to this litigation, and the matter should be remanded to the trial court for their joinder. First, we note that this lawsuit was originally filed by McCurdy, who easily could have named Bingham and Thompson as defendants. His discovery regarding their ownership interest in the property and their plan to partition it is what prompted this litigation to begin with. Next, even if Bingham and Thompson were indispensable parties to the litigation, failure to join *904 them at the trial court was harmless error considering the determination that the trial court did not err in denying the request for preliminary injunction. The trial court was able to rule on the preliminary injunction without Bingham and Thompson being part of those proceedings. To remand now for a retrial of the very same issue simply to include Bingham and Thompson would disturb our sense of judicial economy. Moreover, as regards the legal issues still pending by virtue of Bloom's Petition for Declaratory Judgment, Bingham and Thompson, as well as W. Brooks Watson, the proposed third-party purchaser of the property, have all filed with this court motions to intervene in the litigation. We have granted the motions, and Bingham, Thompson, and Watson are now parties to the litigation.

CONCLUSION
Considering the foregoing, the judgment of the trial court is affirmed, with costs of this appeal assessed to the appellants.
AFFIRMED.
NOTES
[1] Although the Lease refers to the property being 438.28 acres, the legal description of the property describes it as being 443 acres, "more or less."
[2] The parties had also executed a similar lease previously in May, 2000, but the Lease at issue superseded it.
[3] Initially, McCurdy filed an application for supervisory writs with this court, and we responded by ordering the trial court to grant McCurdy an instant appeal pursuant to La. C.C.P. art. 3612.
[4] Although the actual act wherein Bingham and Thompson acquired their respective interests was not made a part of the record, the fact that such an act exists and was recorded in the Tensas Parish public records is not a fact in dispute in this case. Such has been acknowledged by the parties.
[5] See La. C.C. arts. 812 and 813.
[6] See La. C.C. arts. 807, 812, and 813.
[7] A notice of lis pendens may be recorded to give notice of the pendency of an action "affecting the title to, or asserting a mortgage or privilege on, immovable property." La. C.C.P. art. 3751. "The purpose of a notice of lis pendens is to give effective notice to third persons of the pendency of litigation affecting title to real property." Ducote v. McCrossen, 95-2072 (La.App. 4th Cir.05/29/96), 675 So.2d 817, citing, Whitney National Bank v. McCrossen, 93-2160 (La.App. 4th Cir. 03/29/94), 635 So.2d 401. The recordation of the notice of lis pendens makes the outcome of the suit as to which notice is given binding on third parties and that is the only purpose of the notice of lis pendens. Id. So long as an action is pending and affects title to immovable property, then the notice of lis pendens giving notice of that action is proper and the merits of the pending action do not affect the propriety of the notice of lis pendens. Id.