993 So.2d 334 (2008)
Gerald NETTERS, Darrell Netters, and Colette Spears
v.
Emelda SCRUBBS.
No. 2007-CA-1283.
Court of Appeal of Louisiana, Fourth Circuit.
September 10, 2008.
*335 David J. Foshee, New Orleans, LA, for Plaintiffs/Appellees.
Hilliard C. Fazande II, Atlanta, GA and C. Richard Gerage, Metairie, LA, for Emelda Scrubbs, Ron Alverez and Ayanna Alverez.
(Court composed of Judge CHARLES R. JONES, Judge DENNIS R. BAGNERIS, SR., and Judge ROLAND L. BELSOME).
CHARLES R. JONES, Judge.
The Appellants, Emelda Scrubbs, Ron Alvarez, and Ayanna Alverez, appeal the judgment of the district court which granted the Appellees' motion for summary judgment. We affirm.
This suit arises out of an act of partition for co-owned property, injunctive relief, wrongful conversion, and unjust enrichment filed on behalf of Gerald Netters, Darrell Netters, and Colette Spears,[1] the named Appellees (hereinafter, collectively referred to as "the siblings") who each inherited an undivided interest in immovable property from their grandmother, Mrs. Lucille Laney Scrubbs.
The siblings and their aunt, Ms. Emelda Srubbs, are co-owners of a parcel of land and the duplex situated on the land located at 6021-6023 North Robertson Street in New Orleans, Louisiana. As specified in a judgment of possession rendered in the matter of the Succession of Lucille Laney Scrubbs,[2] the petitioners each own a one-sixth (1/6th) undivided interest in the property, and their maternal aunt, Ms. Emelda Scrubbs, owns a respective one-half (½) interest in the same.
Ms. Scrubbs occupied the property with her mother, Mrs. Lucille Scrubbs, from 1946 up until the date of Mrs. Scrubbs' death in 1992. Subsequent to her mother's death, Ms. Scrubbs lived in one-half of the duplex at 6021 North Robertson Street. By informal agreement, during her occupancy and continuing subsequent to her move in 2000, Ms. Scrubbs managed the property and took care of the maintenance and repairs, paid taxes and insurance, and collected rents.
Nevertheless, the property was heavily damaged by flood waters as a result of Hurricane Katrina and, to date, remains in disrepair. The property was covered by a flood insurance policy issued by The Hartford Fire Insurance Company (The Hartford), to the Estate of Lucille Scrubbs. The named insured was changed from "Lucille Scrubbs" to the Estate of Lucille Scrubbs, subsequent to Mrs. Scrubbs' death in 1992. The policy provided coverage for the building in the amount of $100,000.00 and $40,000.00 for contents. After Mrs. Scrubbs' death, the policy remained in effect and the premiums were been paid by Ms. Scrubbs.
On March 8, 2006, The Hartford tendered payment to the Estate of Lucille Scrubbs, and issued checks for $100,000.00 for damage to the building, and $29,559.12 for contents losses. The payments issued to the estate by The Hartford totaled $129,559.12.
On March 30, 2006, an account was opened at the Hibernia Bank by Ms. Scrubbs and Colette Spears, with Ms. *336 Spears acting individually and as an agent of Darrell Netters and Gerald Netters. The account, bearing account number XXXXXXXXXX, was titled Succession of Lucille Laney Scrubbs.
On the same date the Hibernia account was opened, domestic wire transfers were prepared by Hibernia Bank upon the instructions from Ms. Scrubbs and Ms. Spears, Darrell Netters, and Gerald Netters in the amount of $21,593.18, which represented one-sixth of the total funds deposited into the succession account. Presumably, the funds in the Hibernia account were to be wired to the individual accounts for each sibling. An additional wire transfer slip, in the amount of $64,779.56, was prepared for the wiring of funds to Ron M. Alvarez or Ayanna Alvarez[3] the named co-defendantsrepresenting the insurance payment for the one-half ownership interest of Ms. Scrubbs.
However, before the wire transfers were processed by the bank, Ms. Scrubbs allowed Mr. Alvarez to withdraw $129,570.62 the entire balancefrom the account. Mr. Alvarez subsequently deposited the funds into he and his wife's joint account, bearing number XXXXXXXXX, at J.P. Morgan Chase Bank.
Upon discovering that the funds had been withdrawn from the Hibernia account, the siblings retained counsel, and on May 12, 2006, they filed a petition to partition co-owned property naming Ms. Scrubbs as a defendant. In particular, the siblings sought a partitioning of the property and recovery of their share of the insurance proceeds received as a result of damages occasioned by Hurricane Katrina. In addition, they sought an accounting for rent received by Ms. Scrubbs, less any amounts reimbursable to her for maintaining the property.
On June 6, 2006, the siblings filed an amended petition in which they named Mr. Alvarez as a defendant and sought an injunction prohibiting the defendants from disposing of the co-owned insurance proceeds.
On November 9, 2006, the siblings filed a second supplemental and amended petition to partition co-owned property, for injunctive relief, for wrongful conversion and unjust enrichment. In this second petition, the siblings added Mrs. Alvarez as a defendant and edited an allegation that Mr. and Mrs. Alvarez had taken the $100,000.00 insurance proceeds and had converted the money for their own use.[4]
The siblings filed a motion for summary judgment on April 2, 2007, seeking a partial summary judgment that would declare them as owners of 1/6th each of the $100,000.00 paid by The Hartford insurance company for flood damages to the co-owned property.[5]
On May 17, 2007, a hearing on the motion for summary judgment was held and the district court granted a partial summary judgment in favor of the siblings and against Ms. Scrubbs and Mr. and Mrs. Alvarez, jointly and severally, in the amount of $50,000. This amount represented 50% of the insurance payment the Estate of Lucille Scrubbs received for flood damages to the North Robertson Street property.
*337 On August 16, 2007, the district court issued an order certifying its judgment as final under the provisions of La. C.C.P. art. 1915(B). This timely appeal followed.
In the instant matter, the Appellants raise the following three (3) assignments of error: (1) the district court erred by ruling that Ms. Scrubbs was acting as negortorium gestor who acted in her own interest and in the interest of all other owners, thereby requiring a division of the proceeds according to their ownership interests; (2) the district court erred by not recognizing the existence of genuine issues of material fact between the parties, and, accordingly the siblings were not entitled to a partial summary judgment; and (3) the district court erred by ruling that a non-party to the contract had standing to interpret the intentions of the insurance company and Ms. Scrubbs as to whose interest was being insured.

DISCUSSION
The appellate court reviews summary judgments de novo under the same criteria governing the trial court's consideration of whether summary judgment is appropriate. Shambra v. Roth, 04-0467, p. 2 (La.App. 4 Cir. 9/29/04), 885 So.2d 1257, 1259, citing Reynolds v. Select Properties, Ltd., 93-1480, p. 2 (La.4/11/94), 634 So.2d 1180, 1182; Alexis v. Southwood Ltd. Partnership, 00-1124, p. 2 (La.App. 4 Cir. 7/18/01), 792 So.2d 100, 101. The summary judgment procedure is designed to secure the just, speedy and inexpensive determination of actions. Accordingly, a motion for summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law. See La. C.C.P. art. 966(A)(2), and La. C.C.P. art. 966(B).
For purposes of a summary judgment, "a fact is material when its existence or non-existence may be essential to the plaintiff's cause of action under the applicable theory of recovery." Windham v. Murray, 06-1275, p. 3 (La.App. 4 Cir. 5/30/07), 960 So.2d 328, 331. For purposes of insurance cases, "a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of a legal dispute." Jamison v. D'Amico, 06-0842, p. 4 (La. App. 4 Cir. 3/14/07), 955 So.2d 161, 164, citing, Hines v. Garrett, 04-0806, p. 1 (La.6/25/04), 876 So.2d 764, 765. Additionally, as stated in La. C.C.P. art. 966(C):
The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.
Concerning the statutory laws applicable to co-owned property, "[o]wnership of the same thing by two or more persons is ownership in indivision. In the absence of other provisions of law or juridical act, the shares of all co-owners are presumed to be equal." La. Civ.Code art. 797. "No one may be compelled to hold a thing in indivision with another unless the contrary has been provided by law or juridical act." *338 La. Civ.Code art. 807. "Any co-owner has a right to demand partition of a thing held in indivision. Partition may be excluded by agreement for up to fifteen years, or for such other period as provided in La. R.S. 9:1702 or other specific law." Id. "The mode of partition may be determined by agreement of all the co-owners. In the absence of such an agreement, a co-owner may demand judicial partition." La. Civ. Code art. 809.
In their first assignment of error, the Appellants argue that the district court erred by ruling that Ms. Scrubbs was acting as negotorium gestor who acted in her own interest and in the interest of all other owners, thereby requiring a division of the proceeds according to their ownership interests.
Black's Law Dictionary, Sixth Edition (1991), defines negotiorum gestio, in pertinent part as:
In the civil law, a transactor or manager of business; a person voluntarily constituting himself agent for another; one who, without any mandate or authority, assumes to take charge of an affair in concern for another person, in the latter's absence, but for his interest.
The corresponding Louisiana statute related to the legal principle of negotiorum gestor is found at La. Civ.Code art. 2295. The statute, appropriately titled Duties of the manager; liability for loss, provides:
The manager must exercise the care of a prudent administrator and is answerable for any loss that results from his failure to do so. The court, considering the circumstances, may reduce the amount due the owner on account of the manager's failure to act as a prudent administrator.
Before liability can attach to one who undertakes to manage affairs of another, it must be established that one claiming damages had some relationship with [the] "undertaker" and that [the] undertaker's failure to perform breached an obligation to properly complete work as [a] prudent administrator. Hodges v. Southern Farm Bureau Cas. Ins. Co. (La.App. 1 Cir.1982), 411 So.2d 564, 567, writ granted 427 So.2d 863 (La.1983), order amended and case remanded, 433 So.2d 125.
In her deposition testimony, Ms. Scrubbs noted that although she never asked for contributions for the insurance premiums from the co-owners, she did contact her niece, Ms. Spears, when annual insurance premium notifications arrived. Ms. Scrubbs testified that, "I told them the insurance was due and I was paying it." She also testified that she never asked Colette or any of the other siblings to send her any reimbursement for the insurance premium payments, "because I was living there" and she "was taking care of her share."
Ms. Scrubbs further testified that when the insurance checks arrived from The Hartford, she contacted Ms. Spears because the checks were payable to the Estate of Lucille Scrubbs; she also indicated that the checks required the endorsement of each sibling. She also testified that Ms. Spears "got her brothers so that they could sign the check and [Ms. Spears] signed the check[s] and we had went to the bank." Ms. Scrubbs indicated that both she and her niece had the ability to withdraw funds from the account and that both she and Ms. Spears had made arrangements with the bank to have insurance proceeds wired to their individual accounts in proportion to their respective ownership interestsshe would retain $64,779.56, while the three named siblings would each receive $21,593.18. Ms. Scrubbs also averred that her son and daughter-in-law were under the impression that Ms. Scrubbs had intended to buy the siblings *339 interests out, "but it didn't happen that way."
Ms. Scrubbs testified that when she returned home from the bank, her son inquired about the buy out. She informed him that she did not go through with her plan because "she wanted to keep peace in the family." However, she testified that although she still wanted to buy the siblings out, she was not willing to pay the siblings their 1/6th share. Instead, the following colloquy explains what happened to the insurance proceeds after Ms. Scrubbs and Ms. Spears deposited the checks in the bank:
Q. He asked you if you had bought them out, you said no. What did you do next?
A. What did we do next?
Q. Yes. The money was sitting there at the bank.
A. I know we was going to have problems because I didn't agree with what they was doing any more. So we went got the money out and we acquire [sic] our lawyer to make a fair deal with the situation. So that's when I hired Mr. Fazande, to make sure that the situation would be fair. And I told her on the phone when she called me, ask me, "Did you take the money out," I said, "Yeah. I hired a lawyer," I said "because it's unfair." I said, "And I know it's unfair, but I just wanted,'cause you was my sister children, that I wanted everythingfor us to stay a family."
Q. So was it your idea or your son Ron's idea
A. It was my idea.
Q. Let me finish the question. Was it your idea or was it your son Ron's idea to take the money out of the bank?
A. It was both of our idea.
Ms. Scrubbs testified that shortly thereafter, she and Mr. and Mrs. Alvarez went to the bank and she wrote a check payable to her son for the entire contents of the account. She noted that the Alvarezes deposited the check into their personal savings account. She also testified "I don't know where they deposit it all. All I did was give them the check." However, when she was specifically asked whether she gave the Alvarezes authorization to spend the funds as they saw fit, she responded:
A. They do what they want with it because they taking care of me.
Q. Let's start with this: Do you know what they did with this money?
A. No I don't.
Q. As you sit there today, you don't know what happened to the money?
A. Unh-unh (negative response).
* * * *
Q. Is it your opinion that this is your money?
A. Wherever the money is, it's part of mines in there. I don't know where it's at. Wherever it's at, it's part of mines in there.
Q. And I'm talking about $129,570?
A. Yes.
Ms. Scrubbs testified that shortly after the Alvarezes withdrew the funds from the Hibernia account and deposited the checks into their personal account, she had instructed her son to "safeguard" the funds until the legal issues were straightened out. When asked whether she knew whether the Alvarezes had purchased property, she testified that she did not know, but she did indicate that after Hurricane Katrina "[t]hey bought the house that we're in."
*340 The Alvarezes testified that the funds were deposited into their personal account. Although both of them testified that they were to safeguard the money, they admitted that they purchased a CD because they handled Ms. Scrubbs' business. They also admitted that they used the CD towards the purchase of immovable property. Mr. Alvarez, in particular, acknowledged that the funds were the subject of a legal dispute, but justified the use of the funds by his wife and himself as being authorized by Ms. Scrubbs, even though she had no knowledge of the 10.5 acre purchase of the immovable property in Bourg, Louisiana.
Ms. Scrubbs and the Alvarezes assert that Ms. Scrubbs was not acting as a negorium gestor, and that Ms. Scrubbs did not pay the insurance premiums for the benefit of all of the co-owners of the property. They assert that Ms. Scrubbs' statement that she was "taking care" of her share only meant that she was insuring her interests in the property, in the same way she had insured the contents in the property.
In support of their argument, Ms. Scrubbs and the Alvarezes cite McCurdy v. Bloom's Inc., 39,854 (La.App. 2 Cir. 6/29/05), 907 So.2d 896. In McCurdy, the lessee of hunting property sought a preliminary injunction to prevent the lessor from partitioning the property and to maintain the lessee's peaceable possession of the property. Id. The district court denied the lessee's petition for preliminary injunction and the lessee appealed. Id. The Court of Appeal held, inter alia, that the lessee's one-half interest in the property did not attach to the entire property under the theory that the lessor acted as the manager of property (negotiorum gestio), and affirmed the findings of the district court. Id., 39,854, p. 5, 907 So.2d at 900.
However, Ms. Scrubbs' and the Alvarezes' reliance upon McCurdy is misplaced. The Court stated in McCurdy:
Louisiana C.C. art. 2292 states that "[t]here is a management of affairs when a person, the manager, acts without authority to protect the interests of another, the owner, in the reasonable belief that the owner would approve of the action if made aware of the circumstances." This is known as the doctrine of negotiorum gestio and is considered a quasi-contract. Kirkpatrick v. Young, 456 So.2d 622 (La.1984). As stated in the 1995 Revision Comments to art. 2292, "[t]his Article does not apply when the person who undertakes management acts in his own interest or contrary to the actual or presumed intention of the owner. In such a case, there is a usurpation, and the person who manages an affair under these circumstances may incur liability under the law of delictual obligations."
Id., 39,854, p. 5, 907 So.2d at 900.
It is uncontested that the siblings own an undivided 1/6th interest each in the immovable property located at 6021-23 North Robertson Street, while Ms. Scrubbs owns an undivided one-half interest in the property. This ownership distribution is expressly specified by the judgment of possession rendered in the Succession of Lucille Laney Scrubbs. It is also uncontested that subsequent to her mother's death, Ms. Scrubbs lived in one-half of the duplex at 6021 North Robertson Street. She lived in the property, managed the property, and took care of the maintenance and repairs, paid taxes and insurance, and collected rents.
In her testimony, Ms. Scrubbs not only admitted that she contacted Ms. Spears, she also acknowledged that she paid the yearly insurance premiums because she lived at the property and collected rents. *341 Ms. Scrubbs testified that she never requested reimbursement from the co-owners and she never shared any rent proceeds with the co-owners. Ms. Scrubbs also admitted that she had intended to share the insurance proceeds from the property damage payment with the siblings.
However, once she spoke with her son, Ms. Scrubbs willfully and deliberately made the decision to surreptitiously withdraw the funds and furtively transfer the funds to her son. Although the insurer paid the claim for damages to the Estate of Lucille Scrubbs, and the checks thereof required endorsement of Ms. Scrubbs and the siblings, Ms. Scrubbs was cognizant of the agreement she made with the siblings, and she was also cognizant that the co-owners would not have access to funds that she admitted were partially theirs.
Ms. Scrubbs testified that she wrote a check to her son so that he could withdraw the entire insurance proceeds from the Hibernia joint account because she anticipated that some "resolution" would need to occur. Up until she wrote the check to her son, Ms. Scrubbs had been managing the affairs of the property and she kept the siblings reasonably informed about the arrival of the insurance premiums, hence, Ms. Scrubbs was a negotiorum gestor under the law.
In the instant case, a usurpation did not occur. A usurpation would have occurred had Ms. Scrubbs never contacted Ms. Spears, and if she routinely and unilaterally made decisions regarding the co-owned property in a manner as if she were the sole owner. However, at all times relevant to the instant matter, Ms. Scrubbs kept in contact with the co-owners enough to inform them when policy premiums arrived, and when disaster came, that compensation from the insurer was paid.
The Appellants cite to the comments of La. Civ.Code art. 2292 to allude to the fact that a usurpation would undermine any negotiorum gestor relationship. However, in the instant case and at all times up until the time the funds were deposited, Ms. Scrubbs administered the affairs of the property on behalf of all owners of the property. The fact that the money was transferred and was later used to purchase property after an agreement was made regarding the division of the insurance proceeds, does not equate to a usurpation; rather, it was Ms. Scrubbs' failure to act as a prudent administrator. Once the funds were removed from the account, a conversion with the intent of depriving the siblings of their property occurred. The fact that Ms. Scrubbs later signed an affidavit some six (6) months after her original testimony setting forth, "[i]n [Ms. Scrubbs'] deposition on September 28, 2006, that her answer to counsel['s] quest[ion] of `taking care of my share,' meant that she was insuring her interest in the property, just like she had insured her interest in the contents," is of no moment. The affidavit which serves to clarify Ms. Scrubbs' testimony is self-serving because in her original deposition, dated September 28, 2006, she clearly admitted that she and Ms. Spears agreed that the payment for the contents portion of the insurance proceeds would be hers, but the property damage proceeds would be divided according to their respective interests.
Based upon the informal relationship whereby Ms. Scrubbs undertook the responsibility to tend to the subject property,[6] the district court granted the siblings' motion for partial summary judgment *342 based on the doctrine of negotiorum gestor. This Court's review of the record supports the district court's findings and we conclude that this assignment of error does not have merit.
In their second assignment of error, the Appellants argue that the district court erred by not recognizing that there exist genuine issues of material fact between the parties and that the siblings were not entitled to a partial summary judgment.
The Appellants list the following as undisputed facts:
1. On August 29, 2005, the date of the loss, the property at 6021-23 North Robertson Street in New Orleans, Louisiana was call owned by petitioners in an 1/6 interest each along with defendant Emelda Scrubbs who had an undivided one half ownership interest.
2. The subject property was inherited, by petitioners and defendant Emelda Scrubbs from Lucille Scrubbs, the petitioners' grandmother and Emelda Scrubbs' mother.
3. The policy of flood insurance covering the property at the time of the laws was issued by The Hartford Insurance Company to the estate of Lucille Scrubbs.
4. Neither plaintiffs nor the defendant Emelda Scrubbs were occupying the premises at the time of the loss.
5. By consent of all parties, Emelda Scrubbs, from the date of her mother's death, collected rents, arranged for needed repairs, and paid insurance premiums on the co-owned property.
6. Rents far in excess of the amount needed to maintain flood insurance on the property were collected by Ms. Scrubbs. She never requested additional money from petitioners for payment of premiums.
7. The bill for the flood insurance premium arrived on an annual basis, and each time Emelda Scrubbs called her niece, Colette Spears and told her that she had received the bill and was paying it.
8. Emelda Scrubbs paid the insurance premiums, because she was occupying part of the property without paying rent and felt it was fair and that she was "doing her part."
9. The Hartford Fire Insurance Company issued a check payable to The Estate of Lucille Scrubbs, in the amount of $100,000.00 for flood damage to the building at 6021-23 N. Robertson Street.
10. The $100,000.00 check was endorsed by petitioners and defendant, Emelda Scrubbs and deposited into an account at the Hibernia Bank in the name of "the estate of Lucille Scrubbs."
11. Defendant Emelda Scrubbs participated in setting up wire transfers that would have transferred 1/6 of the insurance proceeds to each petitioner.
12. Prior to the transfer of funds, Emelda Scrubbs and her codefendants withdrew the funds in their entirety and have refused to give petitioners their share.
13. Without the knowledge of Emelda Scrubbs, defendants Ron Alvarez and Ayanna Alvarez used a portion of the insurance proceeds, $100,000.00, to purchase a certificate of deposit, in their names, which they subsequently pledged as security to buy land, also in their names.
Since we have touched upon the issues related to negotiorum gestor, in Ms. *343 Scrubbs' and the Alvarezes' first assignment of error, we reiterate that during discovery in the instant matter, the Appellants became aware that Ms. Scrubbs' son and daughter in law, Mr. and Mrs. Alvarez, gave approximately $29,559.00 to their children and purchased a certificate of deposit with the remaining $100,000.00, in their own names. They subsequently pledged the certificate of deposit for the purchase of 10.5 acres of vacant land in Bourg, Louisiana. The land was allegedly purchased in Mr. and Mrs. Alvarez's names and without Ms. Scrubbs' knowledge.[7]
Ms. Scrubbs testified that she allowed her son to withdraw the entire insurance proceeds from that Hibernia account because she anticipated that some "resolution" would need to occur. However, La. Civ.Code art. 805 is clear that co-owners have the right to demand partition at any time. Up until she wrote the check to her son, Ms. Scrubbs had been managing the affairs of the property and based upon the agreement she made with Ms. Spears upon depositing the insurance proceeds into the bank, and the fact that the siblings did not have access to funds they were legally entitled to, we find that the district court did not err in granting a partial summary judgment, as the Appellants have not shown any genuine issue of material fact which would preclude the granting of summary judgment. Hence, this second assignment of error is without merit.
In their last assignment of error, the Appellants assert that the district court erred in ruling that a non-party to the contract had standing to interpret the intentions of the insurance company and Ms. Scrubbs as to whose interest was being insured.
It is uncontested that the contract of insurance provided by The Hartford was purchased by Mrs. Lucille Laney Scrubbs and none of the parties in the instant matter were named as beneficiaries in The Hartford insurance policy. The siblings have only pursued their claims as they relate to their 1/6th interest each in the $100,000.00 The Hartford paid under the property insurance contract. However, the Appellants assert that rather than acting as a negotiorum gestor, as discussed above in the Appellants' first assignment of error, that Ms. Scrubbs was merely protecting her own interest in paying the premiums on the contract of insurance.
To bolster support for the proposition that Ms. Scrubbs was acting only in her own interest, and not for the benefit of Ms. Spears and her brothers, the Appellants cite Hartford Ins. Co. of Southeast v. Stablier, 476 So.2d 464 (La.App. 1 Cir.1985). The Hartford case illustrates how courts deal with insurance policies wherein the named insured is shown in the name of an entity. In Hartford, a concursus proceeding was instituted to determine the proper distribution of fire insurance proceeds resulting from the total loss of a house owned in indivision by four sisters. Id. The district court found that the sister, who contracted for the insurance, was acting as a negotiorum gestor for the other sisters, thereby requiring an equal division of the insurance proceeds. Id. The contracting sister appealed. The First Circuit held that the evidence was insufficient to establish that the sister who contracted for insurance was a negotiorum gestor acting in the interest of the other sisters, and thus equal division of proceeds was not *344 required. Id., 476 So.2d at 467. In particular, the Court indicated that:
It is a well established general principle of law a policy of fire insurance is a personal contract between the insurer and the insured. A person who is not either a party to the insurance contract or one for whose benefit it was written is not entitled to a share of the insurance proceeds by the mere fact they have an insurable interest in the property. Franks v. Harper, 141 So.2d 690 (La.App. 3d Cir.1962). A manner of establishing an insurance contract was entered into for the benefit of one other than the named insured is to show the named insured was acting as a negotiorum gestor. See La.Civ.Code art. 2295. The burden of proof in this instance is upon those who are not the named insured. Franks, supra. See also, Voorhies v. Lomenick, 228 So.2d 509 (La. App. 3d Cir.1969). They must establish the named insured intended to cover an interest other than her own insurable interest. (Underscoring ours.) The mere fact a co-owner insures the entire property does not preponderate to establish he is acting for another co-owner. Franks, supra. Cf. Webre v. Graugnard, 173 La. 653, 138 So. 433 (1931).
Id., 476 So.2d at 466. However, Hartford is distinguishable from the instant matter because the contracting sister, who was alleged to have been a negotiorum gestor, had been long estranged from her sisters/co-owners and she contracted the property insurance to protect her own interest in the co-owned property. The Hartford case can be classified, for all intents and purposes, as a usurpation.[8]
In the matter sub judice, given the fact that none of the respective co-owners are expressly named in the policy of insurance, and further considering the fact that Ms. Scrubbs argues that the she never had the express consent of the co-owners to manage the property, we find that Ms. Scrubbs' argument fails. Clearly by her position she does not appreciate that if this Court were to accept the Appellants' argument and declare that the siblings do not have standing, that Ms. Scrubbs would also not have standing because her name is not expressly listed as beneficiary on the policy of insurance. Additionally, we find Ms. Scrubbs' argument problematic when taking into consideration that although she made payments on the property insurance premiums, she took no action to have the insurance policy reissued solely in her name. Hence, this Court finds that the Appellants' third assignment of error does not have merit.

DECREE
The judgment of the district court is affirmed. However, this Court notes that its opinion is final with respect to the monies received as related to the property damage provisions under the contract of insurance. The siblings' rights are reserved with respect to any rights they may have related to the monies received under the contents portion of the insurance payment. In addition, the Court notes that Ms. Scrubbs' right to seek reimbursement from the siblings for expenses incurred due to the management of the co-owned property is also reserved pursuant to La. Civ.Code art. 806.[9]
AFFIRMED.
NOTES
[1] Ms. Spears had power of attorney to transact matters on behalf of D. Netters and G. Netters.
[2] Civil District Court for the Parish of Orleans, Docket No. 93-4716.
[3] Mr. Alvarez is Ms. Scrubbs' adult son. He is also first-cousin to the siblings, D. Netters, G. Netters, and C. Spears.
[4] In the present appeal, the Appellants seek to recover their portion of the $100,000.00 property damage insurance proceeds.
[5] The Appellants have not sought summary judgment on the amount paid under the contents coverage of the policy.
[6] See, Kirkpatrick v. Young, 456 So.2d 622, 625 (La. 1984), in which the Supreme Court held that a person does not qualify as negotiorum gestor, unless he undertakes the management with the benefit of the owner in mind.
[7] Incidentally, Mr. Alvarez testified that the property in Bourg, Louisiana was purchased for Ms. Scrubbs.
[8] See, infra, discussion of McCurdy, page 11-12, 907 So.2d at 903-04.
[9] Louisiana Civ.Code art. 806, titled Expenses of maintenance and management, provides:

A co-owner who on account of the thing held in indivision has incurred necessary expenses, expenses for ordinary maintenance and repairs, or necessary management expenses paid to a third person, is entitled to reimbursement from the other co-owners in proportion to their shares. If the co-owner who incurred the expenses had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment.